## STATE OF MISSOURI ex rel., FIRST NATIONAL BANK, Respondent, v. E. A. BOURNE et al., Appellants.

**Springfield Court of Appeals, November 10, 1910.**

1. **PLEADING: Amendments: Discretion of Trial Court:** The statutes relating to amendments of pleading leave a very large discretion to the trial court, and allows the curing of defects of form and many errors of substance in pleadings to save rights and advance justice.

2. ———: ———: The rule has been stated that an amendment to a petition is allowable, (1) when the same evidence will support both petitions. (2) When the same measure of damages will apply to both; but this hard and fast rule has been deviated from by the Supreme Court, and a more liberal interpretation of the statute has been announced to the effect that as long as the plaintiff adheres to the same contract or injury, and the amendment is merely a fuller statement of the matter to meet the possible scope of testimony, and does not substantially change the claim, the amendment will be permitted, for in such case it is not a change of the cause of action.

3. ———: ———: Mandamus. The authority to allow amendments in cases of proceeding by mandamus, is specifically provided for by statute. Section 657, Revised Statutes 1899, contains a general provision for allowing amendments of pleadings, and section 675, specifically provides that these provisions apply to writs of mandamus, as well as to other proceedings.

4. **MANDAMUS: Pleading: Amendments: Departure.** A petition for an alternative writ of mandamus against the members of a school board for refusing to let the school funds to the bidder offering to pay the highest rate of interest, charged the misconduct of the members of the board to be the letting of the fund to the lowest bidder, and not to the relator, who was the highest bidder. The second or amended petition added the charge of fraud, collusion and bad faith on the part of the board. *Held*, that the amendment was allowable and was not a departure from the original petition.

5. **PRACTICE: Pleading: Mandamus: Amendments: Departure: Entering General Appearance: Jurisdiction.** Where the defendants make the point that the amended petition for a

State ex rel. v. Bourne.

writ of mandamus was a departure from the cause of action stated in the original petition, but instead of protecting their right under a special appearance, entered a general and voluntary appearance; they thereby conferred upon the court jurisdiction of the action stated in the amended petition, and are in no position to complain, even if there was a departure.

6. MANDAMUS: Discretionary Acts. When an inferior tribunal or official body charged with the performance of a duty involving a discretion in the exercise thereof, is guilty of a gross and palpable violation of the discretion confided to it, the official body or inferior tribunal may be controlled by writ of mandamus, especially if the right violated pertains to the public.

7. ———: School Fund; Awarding Depositary: Discretion of Board. The general rule is everywhere recognized that the writs of mandamus will not issue to control the judgment or discretion of a public officer or officers, but only to require the performance of a ministerial duty, but where a school board in letting the school fund, awarded the depositary to the lowest bidder, and in doing so acted capriciously, arbitrarily and from personal favoritism, and were guilty of a gross abuse of their discretionary powers, held, that mandamus was the proper remedy, for unless the board could be so controlled the very purpose of the law in regard to awarding depositaries of school funds would be defeated.

8. ———: Action at Law: Finding of Facts: Appeal and Error. Mandamus is a civil proceeding or remedy, having the nature and attributes of a civil action, legal and not equitable, and the finding of the trial court in such cases when supported by the evidence, will not be disturbed by the appellate court.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*D. C. Mallory* and *Frank L. Forlow* for appellants.

(1) It is a rule of pleading in this state that no amendment will be allowed that will change the cause of action, and we contend that the second writ and petition changed the entire cause of action in this case, and in support of our position cite the following authorities. Irwin v. Childs, 28 Mo. 576; Harrison v. Hastings, 28 Mo. 346; Clark v. Transfer Co., 127 Mo.

255; State ex rel. Jackson v. Howard County Court, 41 Mo. 247; Hamlin v. Higgins, 67 Mo. App. (Me.) 625; People v. Ahearn, 104 N. Y. S. 860. (2) When a discretion is vested in a public officer the courts will by mandamus compel such officer to exercise that discretion, but will not direct how it should be done and what conclusions or judgments are to be reached. State ex rel. v. Jones, 153 Mo. 570; State ex rel. v. McGrath, 91 Mo. 386; State ex rel. Phelan v. Board of Education, 24 Wis. 683; Commonwealth ex rel. Snyder v. Mitchell, 82 Pa. St. 343; People v. Contracting Board, 27 N. Y. 378; Free Press Assn. v. Nichols, 45 Vermont 7; People v. Contracting Board, 33 N. Y. 382. (3) It must be borne in mind that mandamus will not lie to control judicial or discretionary acts nor to direct the court to enter a particular judgment. It only lies to compel the judge or person vested with discretion to act or to compel the performance of a merely ministerial duty, but cannot direct how it should be done and cannot direct what conclusion or judgment should be reached. State ex rel. v. Fort, 180 Mo. 108; State ex rel. v. Meier, 143 Mo. 439; State ex rel. v. St. Louis, 158 Mo. 514; State ex rel. v. Garesche, 3 Mo. App. 538; State ex rel. v. Dearing, 173 Mo. 493; State ex rel. v. Broaddus, 207 Mo. 122; State v. Horner, 10 Mo. App. 313; State ex rel. Wear v. Francis, 95 Mo. 44; State ex rel. v. Higgins, 76 Mo. App. 328; State ex rel. v. McIntosh, 205 Mo. 611; Dunklin Co. v. Dist. Court of Dunklin, 23 Mo. 454; State ex rel. Adamson v. Lafayette Co., 41 Mo. 225; Miltenburger v. St. Louis Co. Court, 50 Mo. 173; State ex rel. Schmulzer v. Young, 84 Mo. 90; State ex rel. Lucas v. St. Louis Ct. of App., 87 Mo. 374; State ex rel. Faires v. Buhler, 90 Mo. 560.

*McReynolds & Halliburton* for respondent.

(1) The same right of amendment exists in mandamus proceedings as in other pleadings: in fact, such right is not only recognized by the decisions, but spe-

cifically provided for by statute. R. S. 1899, secs. 657, 675; School Dist. v. Lauderbaugh, 80 Mo. 190; Taylor v. Moss, 35 Mo. App. 470; State ex rel. v. Francis, 96 Mo. 44; State ex rel. v. Ross, 118 Mo. 47; Clark v. Transfer Co., 127 Mo. 269. (2) It is too late for the appellant to complain either as to the permission to amend or the character of the amendment. If the appellant wanted to test the soundness of its position it should have stood on its motion to quash (which is equivalent to demurrer.) Having answered over it is too late now to complain about the amendment. Rogers v. Insurance Co., 132 Mo. App. 275; Richardson v. Pitts, 71 Mo. 128; Greeley v. Cohen, 7 Mo. App. 596; Billings v. Hirsch, 86 Mo. App. 228. (3) The act of awarding the funds was a purely ministerial act. This has been definitely settled by our court. State ex rel. v. Hawkins, 130 Mo. App. 45. (4) While it is generally true that mandamus will not lie to control the discretion of an inferior tribunal in whom a discretion is vested in the performance or non-performance of certain duties devolved upon it by law, yet it is well settled that if discretionary power is exercised with manifest injustice the courts are not precluded from commanding its due exercise. Such an abuse of discretion is controllable by mandamus. State ex rel. v. Public Schools, 134 Mo. 306; State ex rel. v. Board of Health, 103 Mo. 29; State ex rel. v. Smith, 172 Mo. 460, 172 Mo. 618; State ex rel. v. Higgins, 76 Mo. App. 319; 26 Cyc. 161; Hale v. Stinson, 198 Mo. 165.

STATEMENT.—This suit grew out of the letting of the school funds of the Carterville School District to the Miners Bank of Carterville. The relator, the First National Bank, filed a petition for an alternative writ of mandamus in the circuit court of Jasper county, in which it complained that the school funds were advertised to be let to the best and highest bidder, and that at such letting it submitted its bid which was the high-

est, and that the same was not accepted, but that the funds were let to the appellant, the Miners Bank of Carterville, which was the lowest bidder, and that the failure of the school board to accept said bid was prompted by improper motives, and that the acceptance of the other bid was the result of fraud, corruption and favoritism. Six of the defendants were members of the school board. The other defendant, the Miners Bank, was the successful bidder. The acceptance of the lowest bid by the majority of the school board is admitted by the defendants. Two of the defendants, members of the school board, were in favor of awarding the depositary to the relator and appeared in the suit and asked that the remedy prayed for by the relator be granted. The majority of the members of the school board entered a plea of confession and avoidance in which they stated that they accepted the lowest bid, and that they honestly, fairly and without favoritism awarded the funds to the Miners Bank of Carterville and that such awarding was within the discretion of the majority of said board; that they had the right to make such award of said funds, taking into consideration their personal knowledge of the conditions and surroundings and the safety of the funds and the convenience of transacting the business made necessary by creating the depositary; that their action was in good faith and with the honest purpose of doing their duty and was for the best interests of the school district and taxpayers generally.

At the conclusion of the trial, the court found the issues for the relator and entered judgment in its favor, the substance of the judgment being: That the relator, the First National Bank of Carterville, in good faith filed its bid, together with a certified check for two hundred dollars, with the president of the board of education as required by the advertisement, and the relator offered to pay on daily balances for the school funds of said district 4.76 per cent interest; and fur-

ther that the relator was ready and willing to furnish a bond to secure said deposit as required by law. "The court further finds that the Miners Bank of Carterville, one of the defendants herein, also filed with the said president, in due time, according to the terms of said advertisement, its certified check and bid, agreeing to pay 3.50 per cent on the daily balances of the school fund, to the treasurer of said school district. The court further finds from the evidence that each of said institutions bidding for said funds is a reliable institution, each capable of making a bond, and one as convenient as the other for the transaction of business, and the court doth further find that the majority of the members of said board of education, to-wit: W. A. Dumbauld, J. C. Sanders, W. M. Jarred and Charles Earle, intentionally, wrongfully, in bad faith and without any excuse or justification in law or in fact, made said award and election of depositary to the Miners Bank of Carterville, and by so doing, their act constituted a fraud on the relator, First National Bank of Carterville, and on the citizens of Carterville school district.

"The court doth further find that the relator, by reason of the bad faith and illegal action on the part of the board of education, is entitled to the relief prayed, and that the act of the board of education in selecting a depositary as aforesaid is without authority of law, and is fraudulent, and that the contract entered into by the defendant, Miners Bank, with the said board of education is, under the law and the facts in this case, a fraud on the relator herein and the taxpayers of said school district." It was further ordered in said judgment that the order of the school board awarding and designating the Miners Bank as depositary be set aside and held for naught; that the board of education of the school district of Carterville select and designate the First National Bank of Carterville as the depositary for the school funds, in pur-

suance of its bid to pay 4.76 per cent on the daily balances on all money belonging to the said district, and that it accept from the said First National Bank of Carterville and approve a good and sufficient bond in the amount required by said board for the faithful performance of its duties as depositary for said school district, with proper conditions, and that upon compliance with the judgment herein, the funds of said district be immediately paid over and deposited in the First National Bank of Carterville as the depositary for the funds of said district. It was further ordered that the defendant, the Miners Bank of Carterville, transfer said funds in its possession to the treasurer of said school district, or, upon the order of the board of education of the said district, to the said First National Bank immediately after the execution and approval of said bond. And it was further ordered by the court that a peremptory writ of mandamus issue herein to carry out and enforce the orders and decrees of the court, that the costs of the proceeding be taxed against the defendants and that execution issue.''

Subsequently, a motion for a new trial being filed and overruled, an appeal from the judgment was perfected by the defendants.

The alternative writ of mandamus is as follows:

''Whereas, it appears to this court by a petition of the First National Bank of Carterville, on file in the office of the clerk of our said court that, under the laws of the State of Missouri the directors of the Carterville school district, Jasper county, Missouri, are required to advertise for bids for depositary of the school funds of said district and to award the funds to said school district to the depositary complying with the requirements of the law and paying the largest rate of interest per annum on daily balance, for said funds; that, in compliance with the requirements of the law, the directors of the school district of Carterville, Jasper county, Missouri, did, on the 13th day of August,

1909, and thereafter for a period of twenty (20) days, publish in the *Evening Record*, a daily newspaper published in the city of Carterville, Jasper county, Missouri, notice that such bids be received by the president of the board of education, at his place of business on the corner of Main and Fountain streets, up to Friday, September 3, 1909, and that such bids would be opened at a special meeting of the board of education called for that purpose on that date.

"That said notice further required the banking corporation bidding to state in a sealed proposal, the per cent of interest it would pay on the daily balance of the treasurer of the school district on said funds, and required the bank or corporation desiring to bid to accompany the bid with a certified check of two hundred dollars ($200), which check was to be forfeited to the school district should the bid of the sender be accepted and should it fail to make the required bond.

"That the period of time for which such depositary was to be so selected was to terminate July 1, 1911.

"Further, that, in compliance with the terms of said advertisement, the First National Bank of Carterville, Jasper county, Missouri, submitted a bid to the school district of Carterville, Jasper county, Missouri, filing the same with the president of the board at his place of business at the corner of Main and Fountain streets, prior to noon, Friday, September 3, 1909, offering to pay for said school funds four and seventy-six hundredths per cent (4.76%) interest on the daily balance of the treasurer of the said school district, accompany said bid with a certified check for two hundred dollars, and stating that said First National Bank of Carterville, Missouri, was ready and able to furnish the required bond to secure the deposit of said school funds.

"Further, that there was only one other bid submitted to said school board, which bid was submitted

by the Miners Bank of Carterville, Missouri, by the terms of which the said Miners Bank agreed to pay three and one-half per cent (3½%) interest upon the daily balance of the treasurer of said school district, and no more.

"That, nevertheless, you, E. A. Bourne, L. E. Boyd, W. A. Dumbauld, J. C. Sanders, W. M. Jarred and Charles Earle, as directors of the Carterville school district, have refused, illegally, to award said funds to the First National Bank of Carterville, Missouri, and have, without reason, and in the face of the statutory requirement that said funds be awarded to the highest bidder, awarded said school fund to the Miners Bank of Carterville, Jasper county, Missouri, to the injury of said First National Bank of Carterville, Missouri, as appears by said petition.

"Now, therefore, the circuit court, being willing that full justice should be done in this behalf to the said First National Bank of Carterville, Jasper county, Missouri, do command and enjoin that, immediately after the receipt of this writ, you, E. A. Bourne, L. E. Boyd, W. A. Dumbauld, J. C. Sanders, W. M. Jarred and Charles Earle, as directors of the Carterville school district, do enter an order of record in the books of the school district, showing that said school funds were awarded to the said First National Bank of Carterville, at the rate named by the said First National Bank, which was submitted as above set out, and that a rejection be made on record of the bid of the Miners Bank of Carterville; and to accept the First National Bank of Carterville a good and sufficient bond to secure the deposit of the funds of said school district; and you, the Miners Bank of Carterville, to transfer said funds to the First National Bank of Carterville, or that you appear and show cause to the contrary before our Circuit court within Jasper county, at the city of Joplin, on Saturday, the 9th day of October, 1909, at nine o'clock a. m., or as soon thereafter as counsel can be

heard, and herein fail not at your peril, and have then and there this writ and make due return of your execution of the same.

"The clerk of this court is hereby ordered and directed to issue certified copies of this order or writ, to the end that the same may be duly served upon each of the defendants herein."

Upon the return of the alternative writ of mandamus the defendants filed a demurrer in which they assigned that the said alternative writ did not state facts sufficient to constitute a cause of action against the defendants or authorize the court to have ordered the issuance of the writ.

While this demurrer was pending the relator appeared and filed an amended petition, and a second alternative writ of mandamus was issued, which, in addition to the allegations of the first writ, contained other allegations to the effect that the advertisement asking for bids for the school funds was not made in good faith for the purpose of complying with the law in awarding said funds to the banking institution agreeing to pay the highest rate of interest on daily balances, but was made in collusion of the defendant directors of the Carterville school district and the defendant, Miners Bank, for the fraudulent purpose of awarding the said school funds to the Miners Bank and for the further purpose of defrauding the relator of its right as a bidder to have its bid fairly considered. Also, that the First National Bank is a strong, good and prosperous institution, and that its business is promptly, accurately and efficiently conducted, and that its bid to pay 4.76 per cent. on the daily balances of the said school fund was fraudulently refused by the defendant school directors and that the awarding of the funds to the Miners Bank was made collusively, capriciously, wantonly and out of mere favoritism. Further, that the relator had no other

remedy unless this writ should issue and that the relator and the taxpayers would stand defrauded out of large sums of money by reason of the action of the school board to their injury.

The facts disclosed at the trial were substantially as follows: That prior to 1907, the city of Carterville had only one bank, which was the relator, the First National Bank of Carterville. In the spring of 1907, or thereabouts, two other banks were established—the Miners Bank and the Carterville Bank, both being chartered institutions under the state laws. For a number of years the city of Carterville was a school district under the laws of this state governing districts of that character. The funds of the district which were available to the district and used to pay its expenses, were deposited in the bank with which the treasurer did business, and, of course, prior to 1907, the funds were necessarily always kept in the First National Bank, that being the only banking institution in the city. In the spring of 1907, the Carterville Bank was organized, and the treasurer of the Carterville school district then changed the funds to that bank where they remained until the spring of 1909, at which time the treasurer of the district deposited the funds in the First National Bank, the respondent herein, where they remained until the board of education was organized in the spring of 1909. At that time, J. C. Sanders, one of the defendants, was elected treasurer of the school board, and, as he did business with the Miners Bank, the school funds were transferred to that institution. The board at that time was composed of the defendants named in the relator's petition. After the election of the new board, the question of advertising for a depositary for the school funds was agitated. Soon after the organization of the board, a meeting was held at which it was proposed that the state law requiring that the school funds be let to the highest bidder be complied with and that proper advertisements for bids should

be made. The vote was accordingly taken on the question, and three of the members of the board, W. M. Jarred, E. A. Bourne and L. E. Boyd, a majority of the quorum, carried the motion for the letting of the funds over the negative votes of J. C. Sanders, the treasurer, and Charles Earle.   One member of the board, W. A. Dumbauld, was absent from this meeting. In compliance with the order of the board, there was published in the *"Carterville Record"* on August 13, 1909, an advertisement for bids for the funds of the school district, asking that bidders submit their propositions on the third day of September at noon.   Accordingly, the First National Bank, the relator, and the Miners Bank, did submit their respective bids to the board, the bid of the First National Bank being 4.76 per cent on daily balances, and the bid of the Miners Bank being 3.50 per cent on daily balances. A meeting of the board was immediately held to consider the bids at which all the members were present except W. A. Dumbauld, and the bids of the respective banks were opened. L. E. Boyd made a motion that the bid of the First National Bank be accepted by the board, but for want of a second this motion failed. It was then proposed by another member of the board that a ballot be had on the depositary, which motion was carried. Ballot was had and resulted in three votes being cast for the selection of the Miners Bank as depositary and two votes being cast for the selection of the First National Bank. The evidence at the trial tended to show that considerable discussion immediately ensued over the decision of the board in letting the bid to the lowest instead of the highest bidder, Boyd and Bourne contending that such action of the board could not be justified before the patrons of the school district, while some of the other members of the board insisted that "it was nobody's business," and that they proposed to do as they saw fit in the premises. The evidence tended to show that when Earle was

plied with questions as to what reason he had for his action, he at length found refuge in the reply, "I don't care a damn what the public says. We have done this and what are you going to do about it?" At the trial, however, he denied having made this statement. He testified that he had been misunderstood in this statement, and gave as a reason for his action that the First National Bank had already had the funds for some time without paying anything for the use of the money and he thought, to even matters up, that the award ought to be made to the Miners Bank; also, that it would be more convenient for the treasurer to do business with the Miners Bank than with the relator. Jarred also gave as his reason that the First National Bank had had the funds in the past and that it was nothing more than right to help the other bank out a little, and he also thought it would be more convenient and congenial to the treasurer. Sanders stated that his brother was the cashier of the Miners Bank, and he wanted him to handle the funds and would like for his brother to have the business.

NIXON, P. J.—Under the theory adopted by both parties in the presentation of this case to the trial court as well as to this court, two questions are pressed for determination and they will be considered in their order.

I.   The appellants' first assignment is that the court committed error in issuing a second alternative writ of mandamus and in failing to pass upon a demurrer filed by them to the first writ, the contention being that while the first writ was undisposed of the court had no power to issue the second writ and that the defendants' motion to quash the writ for these reasons should have been sustained.

The appellants also contend that the second petition and the alternative writ issued thereon was a complete change of the cause of action, and a departure

from the original in this, that in the original petition and writ, the only charge of misconduct of the members of the school board was that they had accepted the bid of the Miners Bank, which was lower than the bid of the relator, and that under such allegations, no grounds for relief recognized by law were stated. That the second petition and writ added a charge of fraud, collusion and bad faith upon the part of the board and the Miners Bank, and that without this charge no cause of action was stated by the relator either in the petition or alternative writ of mandamus.

The authority to allow amendments in cases of proceeding by mandamus is specifically provided for by statute. Section 657, Revised Statutes 1899, contains a general provision for allowing amendments of pleadings, and section 675, Revised Statutes 1899, specifically provides that these provisions shall apply to writs of mandamus as well as to other proceedings. Our statutes relating to amendments of pleadings leaves a very large discretion to the trial court and allows the curing of defects of form and many errors of substance in pleadings to save rights and advance justice.

Appellants complain, however, that the court erred not only in permitting an amendment, but because the character of the amendment was such as to constitute a new cause of action. The question in our courts as to what extent amendments should be allowed to petitions is not entirely free from doubt, and some difficulty arises in reconciling all the opinions on this question. The test of allowable amendments in some cases has been formulated in the pronouncement (1) that the same evidence will support both petitions, and (2) that the same measure of damages will apply to both, and it has been held that these are the criteria in judging of the allowableness of an amendment. [Scoville v. Glasner, 79 Mo. 449.] But in a later case, our Supreme Court has drifted from this hard and fast rule of inter-

pretation of what is a permissible amendment into a more liberal interpretation of the statute and one more consonant with its spirit. In the case of Rippee v. K. C. Ft. S. & M. Ry. Co., 154 Mo. l. c. 364, 55 S. W. 438, the Supreme Court approved the test announced by the Supreme Court of Vermont in the case of Daley v. Gates, 65 Vt. 592, namely: "As long as the plaintiff adheres to the contract or injury originally declared upon, an alternation of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action." Our Supreme Court declares that if the amendment is merely the same matter more fully or differently laid to meet the possible scope of the testimony, it is not a change of the cause of action. This opinion seems to meet the views announced by GOODE, J., in the case of Stewart & Jackson v. Van Horne, 91 Mo. App. l. c. 655, where he said: ". . . . . although a relaxation of the Procrustean forms, narrow logic and scholastic sublety of the common law in regard to the pleading and practice was as necessary to make judicial proceedings a surer means of determining causes according to their merits, as the transition from mediaeval tenures, regulations and policies was to introduce a broad equality of rights into the law. Justice will too often miscarry if the old technical rules of procedure are not qualified by allowing a wide scope to the privilege of making amendments and the success of litigants will turn too much on the dexterity of their counsel." Again, in the same opinion: "The statutes permit amendments which do not substantially change the claim or defense. [Revised Statutes 1899, secs. 657, 659 and 661.] It is reasonable to conclude that the restriction thus placed on the right to amend, otherwise so generously bestowed, and so consonant to the enlightened spirit of the code and its purpose to get rid of all technical embarrassments in the administration of justice, was intended to extend no further than is

necessary to prevent a party from bringing his action
for the redress of a grievance (or interposing a de-
fense) arising out of a certain occurrence and after-
wards substituting another cause of action or defense
growing out of an entirely different one; to confine a
party's pleadings to the transaction first charged to
have produced the controversy, and not to exclude an
amendment because the two statements of the cause of
action merely vary in details. If this limitation was
not imposed on the privilege to amend, a party sum-
moned in an action would never know what case he
might be called on to meet, while a plaintiff certainly
knows, when he sues in what particular affair he thinks
he was injured.'' The amendment in this case falls
clearly within the principles announced in these cases.
The same parties are retained in the amended petition
as were in the original, and the redress of the same
grievance arising out of the same transaction is
brought under investigation. The injury charged to
have been sustained and for which redress was sought
in the first petition was the illegal award of the de-
pository by the defendants to the lowest instead of the
highest bidder. The injury charged to have been com-
mitted and for which redress was sought in the amended
petition was the illegal award of the same depository
to the highest instead of the lowest bidder; the trans-
action was the same, and the cause of action was sub-
stantially the same. We therefore arrive at the con-
clusion that the amendment was authorized by the stat-
ute and did not substitute an entirely new cause of ac-
tion. Besides this, however, appellants are gored by
the horns of a legal dilemma. If the amendment did not
change the original cause of action, the right of amend-
ment existed under section 657, Revised Statutes 1899.
If, on the contrary, it was a new cause of action, the
defendants, instead of protecting their rights under a
special appearance, entered a general and voluntary ap-
pearance and thereby conferred upon the court juris-

diction of the action under section 566, Revised Statutes 1899.

II.   Appellant' principal contention remains for consideration and is that under the sections of law providing for the awarding of the depositary it is expressly provided that the school board should have the right to reject any and all bids, and that such authority vested them with discretionary power; that, having the discretionary power, they were authorized to exercise it in view of the facts and circumstances as they saw them; that, having acted their discretion could not be controlled and they could not be directed by the courts what action they should take or to whom they should award the depositary.

The general rule is everywhere recognized that the writ of mandamus will not issue to control the judgment or discretion of a public officer or officers, but only to require the performance of a plain ministerial duty. The word "discretion," however, is susceptible of widely different definitions, as actually applied to the administration of affairs.   When it becomes an uncontrolled power, it is often a source of intolerable abuses.   Speaking of the discretion of a judge, an eminent jurist, Lord CAMDEN, said: "The discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends on the constitution, temper and passion.   At best it is often caprice.   In the worst it is every vice, folly and passion to which human nature can be liable." [3 Words and Phrases 209-6.]

The policy and history of our state in its legislation concerning depositaries, county and school, has received a very able and classical statement in the opinion rendered by BLAND, J., in the case of State ex rel. v. Hawkins, 13 Mo. App. l. c. 45, 109 S. W. 77.

"Prior to 1895, the treasurer of the state and the treasurer of many of the counties of the state derived a profit from the state and county funds by receiving

interest thereon from banking corporations in which they deposited said funds. Section 17, article 10, of the Constitution of 1875, declares the making of profit out of state, county, city, town or school district money, or the use of the same for any purpose not authorized by law, by any public officer, to be a felony; and section 15 of the same article, makes a provision for the deposit of all state moneys at interest for the benefit of the state. In pursuance of this declared policy of the state, the Legislature enacted the county depositary law. This policy prohibits all forms of graft by public officers in the handling or depositing of public funds and forbids all favoritism in the selection of banking institutions as depositaries of said funds. Keeping this policy in view, the county depositary act should be so interpreted as to effectuate the purposes the Legislature had in view when enacting it, that is, that the county should receive the benefit of the highest rate of interest obtainable on the county funds at a minimum risk of losing said funds, or any part thereof. This would not be accomplished by the selection of a depositary of doubtful solvency, or whose business methods are not consistent with safe and sound rules of banking. The county courts are by law made the agents of the counties for the transaction of all county business, and the Legislature, in its wisdom, delegated to these courts the power and duty of selecting depositaries for the funds of the counties, and gave them the right to exercise, not arbitrary power, but a sound discretion in making such selection, by providing that they might reject any and all bids for the fund. Without this proviso it would be the imperative duty of the county courts to designate the banking institution making the highest bid as county depositary and to award to it the funds, on the execution of a solvent bond. The proviso modifies the imperative words of the statute, not by leaving it to the discretion of the county courts to select or refuse to select a depositary at all, but to re-

ject any bid made by a banking institution whose solvency or business methods would, in the opinion of the courts, put to hazard the funds of the county, or involve it in litigation in respect thereto. Under the statute, the designation of a depositary is an act in the administration of the financial affairs of the county, and the exercise of a ministerial or executive function conferred upon the county courts by the Legislature.'' It is seen that this opinion limits the discretion to the determination of the solvency and business methods of the bidders for the funds.

The discretion that an official may exercise in the discharge of his duties was discussed in the case of State ex rel. v. Lafayette County Court, 41 Mo. 222, which was a mandamus proceeding to compel the county court to approve the bond tendered by the sheriff. The petition stated that the court exercised its authority in a capricious and arbitrary way in refusing to approve the bond tendered. In the lower court a demurrer was sustained to the sufficiency of the allegations of the petition, and an appeal was taken to the Supreme Court. In passing upon the court's action Judge WAGNER said: ''The approval or rejection of the bond is essentially a ministerial act, though coupled with a discretion. When the law devolves upon an officer the exercise of a discretion, it is sound legal discretion, not a capricious, arbitrary or oppressive one. In a case like the one presented here, if this court has no jurisdiction the petitioner would stand in the anomalous attitude of a person having a clear specific right, and yet be entirely remediless by law.'' Again, in the case of State ex rel. v. Public Schools, 134 Mo. l. c. 306, 35 S. W. 617, our Supreme Court approves the statement of the law concerning discretion announced in the case of Village of Glencoe v. People, ex rel., 78 Ill. 382, where the learned court said: ''The discretion vested in the council cannot be exercised arbitrarily, for the gratification of feedings of malevolence, or for the at-

tainment of merely personal and selfish ends. It must be exercised for the public good, and should be controlled by judgment, and not by passion or prejudice. When a discretion is abused and made to work injustice, it is admissible that it shall be controlled by a mandamus.'' Reference is then made to the following language of the Supreme Court of New York in the case of People ex rel. v. Superior Court, 5 Wend. 114: ''The jurisdiction of this court by mandamus is one of immense importance and extent. . . . It extends to all inferior courts and tribunals. . . . The security of a citizen is essentially increased whenever the territory of undefined discretion . . . is circumscribed by the establishment of well defined and clear principles.'' After reviewing numerous other authorities, our Supreme Court thus concludes: ''These authorities sufficiently indicate that when an inferior tribunal or official body, charged with the performance of a duty involving a discretion in the exercise thereof, is guilty of a gross and palpable violation of the discretion confided to it, this court, in the exercise of the superintending control conferred by the constitution of the state, will control the inferior tribunal by its writ of mandamus, especially if the right violated pertains to the public.'' The latest declaration of our Supreme Court on this question is found in the case of State ex rel. v. Adcock, 206 Mo. l. c. 556, 105 S. W. 270. The question was presented as to whether a board of health could escape a peremptory writ of mandamus under the plea that it exercised its discretion on a subject and that its judgment was final. The Supreme Court made the following reply: ''They claim that they exercised their best judgment, and having done so the incident is finally closed. Does the law place in the hands of administrative boards such arbitrary power? We think not. If so, the courts are not open to the aggrieved, if such there be, and this case is wrongfully here. If so,

such boards can arbitrarily refuse any applicant the rights prescribed by the law, and he is without remedy. If so, such a board can hear the evidence and against all of the evidence, place its *ipse dixit,* and refuse to the applicant the privileges granted by the law. Such a doctrine is not consonant with reason, and it is not the law.''

Appellants claim that they exercised their discretion on this question and that their judgment is final. Discretion must always be reasonably exercised. As to whether or not it is reasonably exercised is a question for the courts. 'In the trial of this case, the evidence of the respective litigants was heard and determined by the court; the three members of the school board who had voted for awarding the funds to the Miners Bank testified in the case and their testimony tended to show that the conditions were the same at the time of the advertisement for bids as at the time of awarding the funds. It goes also to show that without regard to the difference in the bids made by the respective institutions, the funds were in fact awarded to the Miners Bank, because that bank had a personal preference of the majority of the board, a preference not based on sound legal discretion, but on purely personal favor. The evidence also showed that each of said institutions bidding for the funds was in every way reliable, capable of making a bond and complying with all the conditions of the advertisement, and further, that one of the said institutions was as convenient as the other for the transaction of the business of the treasurer.

The acumen and learning of counsel for the appellants has utterly failed to furnish any reason that commends itself to a disinterested person why the school funds were awarded to the lowest bidder instead of the relator, the highest bidder; and no reason has been given for the action of the school board which will stand a moment's investigation when examined

from the viewpoint of the school children and taxpayers of the Carterville school district. Their interests and not those of the contending banks were the paramount and controlling questions which should have governed the action of the school board in awarding the depositary. The members of the school board held an important public office and upon them was enjoined the duty of protecting the interests of the taxpayers and the welfare of the public schools, the most sacred of public institutions, and the law will not tolerate recreancy to that duty or betrayal of the trust under the plea, however plausible, a discretion. As announced in the case of State ex rel. v. Public Schools, supra, the Legislature conferred the power upon the school board as a great and sacred trust, and it was necessarily implied that it was not a warrant for arbitrary and unjust use of such power, but that it should at all times be exercised for the best interests of the children and the people, considered as an entire body politic.

Mandamus is a civil proceeding or remedy having the nature and attributes of a civil action, legal, and not equitable, personal in its nature, and civil, not criminal. [26 Cyc. 140, 141.] The findings of the trial court in such cases, when supported by the evidence, cannot be disturbed by the appellate court. The evidence in this case abundantly shows that the majority of the board of directors in awarding the depositary to the Miners Bank, the lowest bidder, acted capriciously, arbitrarily and from personal favoritism, and were guilty of a gross abuse of their discretionary powers; under such circumstances, unless controlled by mandamus, the very purpose of the law in regard to awarding the depositaries of school funds would be defeated. It is therefore ordered that the judgment of the trial court be and the same is hereby affirmed. *Cox, J.*, concurs; *Gray, J.*, not sitting.