R. L. KISSICK, RESPONDENT, v. E. E. KISSICK AND SWIFT & HENRY LIVE STOCK COMMISSION COMPANY, DEFENDANTS. SWIFT & HENRY LIVE STOCK COMMISSION COMPANY, A CORPORATION, APPELLANT.[*]

Kansas City Court of Appeals. February 1, 1926.

*Corpus Juris-Cyc References: Assignments, 5CJ, p. 889, n. 75; p. 948, n. 91; Chattel Mortgages, 11CJ, p. 520, n. 54; p. 630, n. 44; p. 636, n. 76; p. 670, n. 49; p. 671, n. 60; Evidence, 22CJ, p. 1254, n. 51; Factors, 25CJ, p. 412, n. 83; Pleading, 31Cyc, p. 407, n. 71; Trover and Conversion, 38Cyc, p. 2044, n. 56.

*James M. Johnson* and *Sherratt M. Johnson* for appellant.

*McCanles, Kennard & Trusty* for respondent.

ARNOLD, J.—This is a suit for conversion. There was a verdict and judgment in favor of plaintiff in the sum of $4300.32 and defendant, Swift & Henry Live Stock Commission Company, has appealed.

The facts show that in the fall of 1920 E. E. Kissick, plaintiff's brother, purchased from Tom L. Pratt 150 head of steers and in payment of the same gave the said Pratt a note and chattel mortgage for the purchase price, the note being signed by said Kissick and plaintiff. Pratt lived in western Kansas and Kissick near Beverly in central Kansas. After purchasing the cattle E. E. Kissick shipped them from western Kansas to his farm near Beverly. The mortgage was filed of record in the county in which the mortgagor lived. On or about April 20, 1921, without the consent or knowledge of Pratt said E. E. Kissick shipped thirty-seven head of the cattle to defendant, a live stock commission company in Kansas City, Missouri, who sold the same and applied the proceeds on E. E. Kissick's indebtedness to the Guaranty Cattle Loan Company. Mr. J. C. Swift was president both of the Guaranty Cattle Loan Company and the defendant, the Live Stock Commission Company. The remaining cattle were shipped during the spring and summer of 1921 to Kansas City and sold by the commission company but the proceeds of these cattle were turned over to Pratt who applied the same on his mortgage. Thereafter Pratt brought suit against plaintiff on the note but before the suit was tried plaintiff paid Pratt the balance due, amounting to some $4400; $1000 of said sum being paid in cash and $3400 being paid by note secured by second mortgage on real estate of plaintiff and payable one year after date. Either at the time of the payment of the $1000 or the payment of the $3400 note, which was met when it fell due, Pratt turned over and endorsed to plaintiff the note and chattel mortgage and also assigned to him his right to bring suit against the defendant for conversion.

Defendant commission company contends that its demurrer to the evidence should have been sustained for the reason that the chattel mortgage was not sufficiently definite to constitute constructive notice to strangers and that the thirty-seven head of cattle were sold by the commission company and the proceeds turned over to the Guaranty Cattle Loan Company prior to the time that the former had notice of the mortgage. There is no merit in this contention. Without passing upon the sufficiency of the description of the cattle in the mortgage, there was evidence tending to show that the commission company had actual notice of the mortgage before applying the proceeds of the sale of the thirty-seven head of steers to the indebtedness of the Guaranty Cattle Loan Company.

The facts in this connection show that on April 28, 1921, J. C. Swift, president of the commission company, told plaintiff that E. E. Kissick had shipped to it two carloads of cattle (the thirty-seven head) and that said Kissick did not want him to apply the proceeds on the note that he owed the commission company (it appears that E. E. Kissick owed the commission company a large sum of money as well as the Guaranty Cattle Loan Company) because "the cattle belong to Pratt;" "because they were Pratt's cattle." Swift thought this was strange because the balance of the cattle was sufficient security for the Pratt mortgage and that Pratt was "perfectly safe." Plaintiff then said to Swift that he, E. E. Kissick, had no business to turn the money over to defendant commission company, "that belongs to Tom Pratt . . . he had a mortgage on those cattle." Swift replied, "If it is Tom Pratt's money, I don't want it."

The evidence shows that one Ryan, a commission merchant of Kansas City, Missouri, either on the day the thirty-seven head were sold or the day after, told J. C. Swift that Pratt had a mortgage on them; that he obtained this information from Pratt and that Swift said, "he didn't want any money for any cattle that didn't belong to him, that he said that he ought to have some cattle out there with Mr. Kissick" (E. E. Kissick); that "if those cattle belonged to Pratt—if Pratt had a mortgage on them, that Pratt would get the money." Ryan testified that he had previously seen these cattle at E. E. Kissick's farm and that he gave Swift this information from a friendly motive so that he might protect himself; that commission men are supposed to protect each other. Swift testified that the money was turned over to the Guaranty Cattle Loan Company on the day the cattle were sold and claimed that the conversation he had with Ryan was several days thereafter. He assumed that Ryan was trying to protect Pratt in giving him, Swift, the information; that Ryan was Pratt's commission man and they were good friends.

From Ryan's testimony the inference is that he told Swift about the mortgage prior to the time the money was turned over to the loan

company. But defendant commission company insists that Ryan was a stranger to the transaction and Swift was justified in believing that Ryan had no actual knowledge in respect to the facts. This conversation between Ryan and Swift was not merely idle talk and about a matter that did not concern Ryan, but, according to defendant commission company's testimony, it was told for the protection of Pratt by Pratt's commission man and friend. Ryan testified that he told Swift that he got the information from Pratt. He further testified that he saw the cattle on which Pratt had the mortgage in the possession of E. E. Kissick on the latter's farm and that these were all the cattle that said Kissick had there. Of course, there is no question but that the information given Swift by Ryan constituted notice of the mortgage and that the commission company was liable to Pratt. [25 C. J., p. 412.] Swift testified that E. E. Kissick in shipping the thirty-seven head of cattle told him to apply the proceeds to the latter's indebtedness to the Guaranty Cattle Loan Company; that this was all the information he had that the cattle were Kissick's free from any lien. Swift admitted that he knew when he sold the cattle that most of the cattle coming from Kansas were mortgaged and that he knew that Pratt had a mortgage on some of E. E. Kissick's cattle. The testimony shows that Swift knew that E. E. Kissick was heavily in debt and was financially irresponsible. When Pratt wanted the commission company to settle with him for the cattle Swift did not say that he had applied the money to the indebtedness of the Guaranty Cattle Loan Company but wanted Pratt to sue plaintiff. Swift wanted to make E. E. Kissick arrange his affairs so that he could settle the indebtedness. There are letters in the record written by Swift which are along these lines and which do not suggest any lack of liability on the part of the commission company but evince a great interest in seeing that Pratt was paid without loss to itself if possible. There is ample evidence that the commission company knew of Pratt's mortgage before the turning over of the money, if any, to the Guaranty Cattle Loan Company.

The petition as it read when the parties went to trial alleges that plaintiff was an accommodation endorser of E. E. Kissick's note; that Pratt sued plaintiff as such accommodation endorser and that plaintiff was required to pay Pratt the sum of $4000 on account of his endorsement of the note; that when plaintiff had satisfied said note to Pratt the latter assigned to said plaintiff "all of his right, title and interest in and to the aforesaid described mortgage, that plaintiff was and should be subrogated to the rights of Tom L. Pratt in and to said note." That—

". . . said plaintiff is now the owner of said note and chattel mortgage and as such has all of the rights, title and interest in and to said note and chattel mortgage, that the said Tom L. Pratt

had at the time said cattle were sold and the proceeds turned over in payment of said old indebtedness of the said E. E. Kissock, as aforesaid.''

At the close of the testimony the court over the objection of defendant commission company permitted plaintiff to amend his petition as follows:

'' 'And all his rights against said defendant, and to sue and recover from defendant, Swift & Henry Livestock Commission Company, the sum received by said defendant from the sale of said cattle,' and to further amend by striking out in the sixteenth line the last four words, being 'and to said note' and to insert therein 'said claim.' ''

(The abstract of the record is poorly prepared but we assume that this new allegation is to be inserted after the word *mortgage* as it appears in the first quotation, supra, from the petition.)

It is insisted that the court erred in permitting the amendment of the petition; that the petition upon which plaintiff went to trial merely pleaded the assignment of the note and mortgage by Pratt to plaintiff, that this allegation was not sufficient for the reason that the assignment of the note and mortgage did not assign the right to bring suit against defendant commission company which had theretofore accrued and that the petition was fatally defective in that it did not allege that plaintiff was the owner of or in the possession of the property on the date of the alleged conversion and did not state that plaintiff was entitled to the immediate possession of the property at the time of the conversion and fails to state any special ownership or interest in the property in plaintiff and that there was no breach of duty as to plaintiff.

In support of the contention that the assignment of the mortgage did not carry with it an assignment of a cause of action for a previous conversion, defendant cites the case of Bowers v. Bodley, 4 Ill. App. 279, and like authorities which are mostly based upon the Bowers case. In that case it was held that the assignment of the chattel mortgage passed all of the mortgagee's right in the property but did not carry with it the right to sue persons through whose hands the property had passed for injuries to it before the assignment, and it was held that it was against the public policy of the State of Illinois to permit an assignment for choses in action founded upon a tort. But that such choses in action can be assigned is well established in this State. [Snyder v. Railroad, 86 Mo. 613; 26 R. C. L. p. 1131.]

The courts of this State have never passed upon the question as to whether the assignment of a chattel mortgage conveys a cause of action for a previous conversion of the property mortgaged. This being a case of first impression, we ought to decide the point according to right and justice and not be bound by precedents founded upon a case which declares the law differently than that in effect in our

State or upon cases that cannot be defended on reason or logic. It is well established that after a mortgagee has assigned his title to a mortgage he cannot maintain an action for conversion of the mortgaged property. [7 Cyc. 60; 38 Cyc. 2044; 26 R. C. L., p. 1131, sec. 41.] Pratt's debt was paid in full when he executed the assignment and he had no right thereafter to bring an action. So if defendant is right in its contention, Pratt in assigning the mortgage to plaintiff did not assign this cause of action, but by virtue of the assignment, he unknowingly and unwittingly destroyed every vestige of right on the part of anyone to bring the action. This statement seems to be a paradox and we do not think it can stand up in the light of jus-. tice and reason. At the time that the mortgage was transferred the property covered by it was gone and it is conceded that the principal debtor on the note was and is financially irresponsible, so if anything of value was conveyed by the assignment of the mortgage, it was the right to bring this action.

It is held that where warehouse receipts, bills of lading and like *indicia* of ownership of personal property are assigned, the assignment carries with it the right in the assignee to maintain an action for a conversion of the property which occurred before the assignment. [26 R. C. L., p. 1131, sec. 40; Hamlin v. Carruthers, 19 Mo. App. 567; Dickson v. Elevator Co., 44 Mo. App. 498.] If the conveyance of the symbol of the property transfers a cause of action for its prior conversion, why does not a conveyance of a chattel mortgage transfer the mortgagee's cause of action for a prior conversion of the mortgaged property? We think the assignment of the mortgage in question passed with it every incident to the ownership by it of the assignor (see Sherman v. Ins. Co., 236 S. W. 634), including the right to bring a suit for a prior conversion of the mortgaged property. From what we have said it is apparent that the petition even before it was amended stated a good cause of action. The petition before trial alleged the existence of the mortgage, the sale of the cattle on April 20, 1921, without the advice or consent of the mortgagee or the plaintiff; that the commission company "wrongfully converted and applied the four thousand dollars received . . . to the payment of an old indebtedness of the said E. E. Kissick to the said defendant;" that ". . . . the said application of said money so sold to the payment of said old indebtedness was made without any warrant of authority from the said R. L. Kissick to the said defendant, or without the knowledge, advice or consent of said Tom L. Pratt or plaintiff, as aforesaid. That the defendant knowingly, wrongfully, unlawfully and without authority converted said moneys received from the sale of said steers to its own use to plaintiff's damage."

Section 1274, Revised Statutes 1919, provides that other allegations material to the case may be inserted at any time before judg-

ment "when the amendment does not change substantially the claim or defense." The cause of action sought to be set forth in the petition before its amendment was for conversion and the petition sets forth all the facts in connection with the defendant commission company's conduct in reference to the conversion of the money. It has been held that this statute should be liberally construed; that much discretion is allowed the trial court in permitting amendments. [State ex rel. v. Bourne, 151 Mo. App. 104, 118, 119.] The conversion and all the facts in connection therewith were fully set forth in the petition upon which the parties went to trial. The facts showing the conversion were the same before the amendment as afterwards—the cause of action was substantially the same. Plaintiff was allowed merely to show more fully the manner in which he acquired the cause of action. The two statements of the cause of action merely varied in detail. As was said in State v. Bourne, supra, l. c. 119:

"The amendment in this case falls clearly within the principles announced in these cases. The same parties are retained in the amended petition as were in the original, and the redress of the same grievance arising out of the same transaction is brought under investigation."

It is said that the court should not have permitted the testimony showing that there was an oral agreement that the cause of action was assigned at the time of the assignment of the note and mortgage because such a showing violated the parol evidence rule. There is no merit in this contention.

"The rule which prohibits the introduction of parol—contemporaneous evidence, does not apply where there is offered in evidence a distinct collateral contemporaneous agreement, independent of and not varying the written agreement, though it relates to the same subject-matter." [Roe v. Bank of Versailles, 167 Mo. 406, 427.]

The oral agreement seems to come within this rule and it is unnecessary for us to say what effect the fact that defendant was not a party to the assignment of the mortgage should have on the point.

There was no error in the refusal of defendant commission company's instructions D-2, D-3 and E. Instruction D-2 in its concluding part was a peremptory instruction to find for defendant commission company. Said defendant's instruction D-3 directed a verdict for said defendant wholly ignoring the evidence as to actual notice of the mortgage on the part of the defendant prior to the time of the conversion.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## ON REHEARING.

ARNOLD, J.—Appellant, in its motion for rehearing, charges, first, that the opinion herein erroneously states the facts in this particular, to-wit:

"Either at the time of the payment of the $1000 or the payment of the $3400 note, which was met when it fell due, Pratt turned over and endorsed to plaintiff the note and chattel mortgage and also assigned to him his right to bring suit against the defendant for conversion."

Appellant insists there is no proof that, at any time before the trial of the cause, Pratt assigned to plaintiff his right to bring suit against the defendant for conversion.

We can but construe appellant's position in this respect as due to its theory of the case, to-wit, that the written assignment upon the note and mortgage did not carry with it the right to sue appellant for conversion. This was a controverted issue and appellant is in error in stating that "there is no proof that at any time before the trial of the cause Pratt assigned to plaintiff his right to bring suit against the defendant for conversion." The record shows, and the opinion so states, that both Pratt and plaintiff testified that, at the time the assignment was made, the very point under consideration was mentioned between them. The purport of the conversation was that Pratt would turn over to plaintiff all the papers in the case, and plaintiff could proceed against whomsoever he chose. Plaintiff testified that appellant's name was specifically mentioned in that connection as a defendant in any attempt to collect for the proceeds of the two carloads of cattle alleged to have been converted. To say there was no testimony to that effect is erroneous.

The theory upon which our opinion was based and upon which the cause was tried is that the assignment of the note and mortgage conveyed the right to sue appellant for conversion. It was upon this theory that that part of the statement of facts, of which complaint is made, was bottomed, and we now hold it is literally correct and not open to the objection urged against it.

Parties agree that there is no case in this State directly decisive of this point. Appellant relies largely upon the case of Gabbert v. Wallace, 66 Miss. 618, wherein the court said:

"The right of the assignee to recover the debt and to subject to its payment the mortgaged property is, we think, the measure of his rights, unless there appears in the assignment something indicating a purpose by the mortgagee to assign also the right to proceed against third persons who have during his interest in the property injured or converted it."

There is nothing in the assignment, as written, to indicate that Pratt signified his intention to transfer his right to sue for conversion. But in the Gabbert-Wallace case, the opinion goes further:

428

"The right to sue was one which the mortgagee might either exercise or waive. He might, it is probable, assign it to the assignee of the mortgage debt, but he might also in an assignment of the debt reserve from the assignee the right to pursue others who before that time had injured or converted the mortgaged property."

In the case at bar it is not claimed that Pratt, in the assignment, did reserve his right to pursue the party who had injured or converted the property. The Gabbert opinion, in view of its apparent fluctuating positions, hardly can be accepted as a substantial precedent for a ruling herein. We think our Supreme Court in Sherman v. Life Ins. Co., 236 S. W. 234, has determined the question of the purport of an assignment wherein the assignor transfers "all his right, title and interest" in the instrument assigned. The court said:

"It cannot be supposed, therefore, that the holders of the certificate by their assignments of them to plaintiff intended to invest him with title to the papers merely, while retaining the causes of action of which they afforded in part the sustaining proof and apart from which they were wholly without value. It seems entirely clear that the assignments of the certificate were intended to effect and did effect assignments of the causes of action to which plaintiff is asserting title by this suit."

We think there is no question but that the above excerpt declares the law in this State upon the question involved. We hold, therefore, that the opinion herein did not erroneously state the facts, as charged in the motion for rehearing. The other points raised in the motion for rehearing are held to be statements in different forms of appellant's position. All of these points were fully considered heretofore and determined against appellant's contention, and we hereby adhere to the original opinion in this cause. · *Bland, J.,* concurs; *Trimble, P. J.,* absent.