This case comes to the writer on reassignment. It is an appeal from a judgment of the circuit court of Daviess county denying appellants' claims, aggregating $15,730.80, against the Farmers' Exchange Bank of Gallatin in liquidation. Appellants sought to have their claims allowed as preferred. The trial court, by its judgment, not only denied the claims as preferred, but refused to allow them as common claims.
The evidence discloses the following state of facts: Appellants, plaintiffs below, were directors of the Winston Bank at Winston, Daviess county, Mo. This bank was organized in the year 1917, and from that time up to the date of the closing of the Farmers' Exchange Bank of Gallatin, on March 4, 1926, had transacted business with this bank.
There were two banks in Winston. The one was closed prior to January 1, 1926, and its affairs were placed in the hands of the state finance commissioner. The funds of this defunct Winston Bank were deposited in the Winston Bank of which plaintiffs in this case were directors. In the early part of January, 1926, Black, the cashier of the Winston Bank, had a conversation with Thompson, the cashier of the defendant bank, in which conversation Black informed Thompson that due to the finance commissioner depositing the funds of the defunct *Page 1099 
bank of Winston in their bank, it had a surplus of cash and he, Black, intended to invest this surplus in government bonds. He also informed Thompson that this surplus would be on deposit only a short time, but he desired to have it earn interest and desired to so invest it that he could convert the investment into cash whenever the finance commissioner called for the money.
Thompson then informed Black that his bank, the Farmers' Exchange, could sell the Winston Bank notes signed by responsible people and bearing 8 per cent. interest; that a financial statement of the makers would accompany each note; that if the finance commissioner would at any time call for the money on deposit, the Farmers' Exchange could be depended upon to take the notes. The notes, which are the subject of this controversy, were, under these arrangements, sold by the Farmers' Exchange to the Winston Bank at various dates between January 19 and March 4, 1926. These notes were indorsed without recourse by the Farmers' Exchange, through Thompson. Each note was accompanied by a purported financial statement of the maker, except one, which had a chattel mortgage attached to it. All of the financial statements, as well as the chattel mortgage, proved later, after the Farmers' Exchange closed its doors, to be spurious. The evidence disclosed that they were in the handwriting of Thompson. The makers of the notes testified that the statements were not genuine and that they did not truly represent their financial standing. The evidence shows that the obligors of the notes were hopelessly insolvent on the dates the statements and the notes were alleged to have been executed. After the closing of the Farmers' Exchange Bank, the board of directors of the Winston Bank, by a resolution, authorized the cashier to sell the notes at their face value. The plaintiffs Alfred Beall, E.D. Cutler, and E.M. Shoemaker purchased the notes and paid full value for them. Subsequently, they presented their claims to the deputy finance commissioner in charge of the affairs of the Farmers' Exchange and asked that they be allowed as preferred claims. The deputy commissioner disallowed them. Suit was timely filed in the circuit court and a trial resulted in a disallowance of the claims.
The petition was in six counts. Each note was made the basis of a separate count. In the petition plaintiffs alleged that Thompson had practiced a fraud on the Winston Bank and stated in detail the manner in which the fraud was alleged to have been committed. The answer consisted of a general denial.
Respondent did not attempt to disprove the fraud charged, which charge was substantiated by the plaintiffs' evidence. Respondent contended at the trial, as here, first, that, plaintiffs' action, being an action for fraud and deceit, was not assignable; second, that "there was no valid assignment of the chose in action in an action for fraud, even if the same under the law was vendable and transferable"; third, "Winston Bank had no right to sue for the money paid for these notes and, therefore, had no right to assign"; fourth, that to hold the Farmers' Exchange liable in this case would be to evade the prohibition of section 5380, R.S. Mo. 1929 (Mo. St. Ann. § 5380, p. 7596), by allowing the cashier to bind the bank indirectly when he could not do so directly.
The contention that the action was not assignable is without merit. In Snyder v. Wabash, St. L. Pac. Ry. Co., 86 Mo. 613, this court ruled that the test of whether a cause of action was assignable was whether or not it would survive to the personal representative. This rule of law has been consistently adhered to. It was approved and applied recently in State ex rel. v. Globe Indemnity Co., 332 Mo. 1089, 61 S.W.(2d) 733, loc. cit. 735, 736 (2, 3) (4). In that case the following passage from 2 R.C.L. 596, § 3, was approved:
"Practically the only classes of choses in action which are not assignable are those for torts for personal injuries, and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage."
In 5 C.J., p. 891, § 56, we read in part as follows: "In the absence of such statutory regulations a right of action for fraud or deceit is generally held nonassignable in those cases in which the wrong is regarded as one to the person, but assignable where the injury is regarded as affecting the estate, or as arising out of contract. The mere fact that the right to enforce a claim which is itself assignable depends upon showing fraud incidentally does not make such right of action nonassignable. So the right has been said to be assignable where by the statute assumpsit may be brought for injuries produced by such a wrong on an implied promise to pay the damages, and the cause of action survives."
See, also, Houston v. Wilhite, 224 Mo. App. 695,27 S.W.(2d) 772. If a fraud of the nature *Page 1100 
charged in this case had been practiced upon an individual, would it be contended that after his death his administrator could not rightly maintain a suit for the fraud? If he could, of which we do not think there is any doubt, the cause of action was assignable.
The second contention of respondents, that the assignment was insufficient to carry with it the right to sue in fraud, is likewise untenable. The assignees paid the full amount of the notes for the assignment. The assignment, therefore, carried with it all of the remedies that were inherent in the notes, including the right to sue for fraud. To hold otherwise would result in the absurdity of saying that the assignment transferred to the assignees worthless notes, and that the assignor, although receiving the full face value of the notes, retained a valuable cause of action inherent in the notes. Rice v. Howard,136 Cal. 432, 69 P. 77, loc. cit. 81 (3), 89 Am. St. Rep. 153; Sherman v. International Life Ins. Co. of St. Louis, 291 Mo. 139,236 S.W. 634; Kissick v. Kissick, 221 Mo. App. 420, 279 S.W. 764. A payment to the assignees of the amount due on the notes would most certainly have extinguished any action for fraud. We hold that the assignment of the notes for their face value carried with it all of the remedies belonging to the assignor.
In subdivision "b" of the third contention it was urged that the Winston Bank had affirmed the transaction and could not rescind it; that to rescind the transaction the notes in question would have to be returned; having failed to do so, the assignees could not rescind the transaction. This is a suit in equity. In the petition the plaintiff's offered to surrender the notes to the commissioner of finance in charge of the assets of the bank. That was sufficient. This court en banc so said in the case of Custer v. Shackelford, 225 S.W. 450, loc. cit. 455 (4). In the case before us the offer to surrender the notes was a mere formality. We do not find anywhere in the record that any party to the suit desired to have the notes. They were admitted to be worthless. It was, therefore, unnecessary and would have been a futile act to require the plaintiff, by a decree of court, to surrender the notes to the finance commissioner. There was no evidence introduced of any act, on the part of the Winston Bank, affirming the transaction other than the assignment and sale of the notes to plaintiffs after the defendant bank had closed its doors.
It is also asserted that the Farmers' Exchange Bank could not be made liable by anything the cashier did without authority of the board of directors. Respondent admits that the cashier had authority to sell the notes of the bank indorsed without recourse, but denies that the bank could be bound in any way by reason of a delivery of the financial statements with the notes. The delivery of the financial statements, had they been genuine, to the purchaser of the notes would not have created any liability against the bank even though the statements misrepresented the financial condition of the makers. Any statements made by the cashier, even if made within the scope of his authority, not in writing, as to the financial standing of the makers of the notes, would not bind the bank. This because of section 2970, R.S. Mo. 1929, Mo. St. Ann. § 2970, p. 1858, which section requires such representations to be in writing, otherwise no cause of action can be based thereon. Boyd v. Farmers' Bank,223 Mo. App. 443, 14 S.W.(2d) 6. Appellants, however, are not seeking to hold the bank for any representation the cashier made as to the financial responsibility of the makers of the notes, but are seeking, by this proceeding, to impress the funds of the bank with a trust for the amount obtained and held by the Farmers' Exchange through the fraud of the cashier practiced upon the Winston Bank. The sections of the statute interposed as a defense are not applicable to this case.
This practically disposes of respondents' fourth contention that to hold the Farmers' Exchange liable in this case would allow Thompson, the cashier, to bind the bank indirectly where he could not do so directly. We do not so view the situation. The cashier, by delivering the false financial statements, committed a fraud upon the bank of Winston. Thompson had authority to sell the notes for full value and to indorse them without recourse. He also had authority to deliver, with the notes, any financial statements given to the Farmers' Exchange by the signers of the notes. Thompson was acting within his authority, and, while so acting and transacting business for his principal, committed a fraud by delivering forged financial statements and a forged chattel mortgage on the strength of which he received money for the bank. In such a case, the principal is held bound for the wrongful act of his agent. 2 C.J. 849, § 534, and cases cited under note 29; Darks v. Grocer Co., 146 Mo. App. 246,130 S.W. 430, loc. cit. 437; First Nat. Bank v. Graham, 100 U.S. 699, loc. cit. 702, 25 L. Ed. 750. *Page 1101 
It is also argued that for six years note transactions had been carried on between the Farmers' Exchange Bank and the Winston Bank; that the Winston Bank had bought and collected many notes; and that the transactions here in question were nothing more than the usual customary routine of business between the two banks.
If there is any force in this argument, we confess that we have failed to appreciate it. The fact that the two banks had transacted business with each other for a number of years and the Winston Bank had bought notes from the Farmers' Exchange that proved to be good and collectible did not give the Farmers' Exchange a license to practice a fraud on the Winston Bank and obtain thereby $15,000 in cash in exchange for worthless notes on the strength of fictitious financial statements. The fact that the two banks had previously transacted business which proved to be satisfactory and profitable to both rather aggravated than mitigated the fraud.
The Farmers' Exchange, having received cash equal to the amount of the claims of appellants from the Winston Bank through fraud and having mingled the funds with the general assets of the bank, made the Farmers' Exchange a trustee ex maleficio of the funds. State ex rel. v. Page Bank, 322 Mo. 29, 14 S.W.(2d) 597, loc. cit. 599 (1, 2); In re Cameron Trust Co., 330 Mo. 1070,51 S.W.(2d) 1025, loc. cit. 1027 (4, 5); 65 C.J., page 462, § 220.
Respondents do not deny, and the evidence affirmatively shows, that the assets of the Farmers' Exchange were swelled by the transactions, and that the assets of the bank so augmented passed and are now in the hands of the deputy finance commissioner. Hence the claims should be allowed as preferred. Houston v. Wilhite, 224 Mo. App. 695, 27 S.W.(2d) 772; Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S.W.(2d) 751; Porterfield v. Farmers' Exchange Bank, 327 Mo. 640, 37 S.W.(2d) 936, 82 A.L.R. 22.
The judgment of the trial court must, therefore, he reversed and the cause remanded with directions to allow the claims as preferred. It is so ordered.
COOLEY and FITZSIMMONS, CC., concur.