ADRIAN F. SHERMAN v. INTERNATIONAL LIFE INSURANCE COMPANY OF ST. LOUIS, Appellant.

In Banc, December 30, 1921.

1. **MONEY HAD AND RECEIVED: Assignment of Certificates: Rescission of Contract: Operate as Assignment of Causes of Action.** Where an insurance company had issued annuity certificates whereby it agreed to apportion to the owners annuities during their lives equal to twenty-five cents per one thousand dollars of all insurance written for fifty years, the aggregate of such annuities to be ascertained annually, and after receiving the full purchase price repudiated the contracts evidenced thereby, the original holders of such certificate had the option to sue for the sums payable under their certificates, or to treat the contracts as rescinded and sue for the money paid for them; and if after such repudiation an original holder, without electing to rescind, had assigned his certificate, the right to recover the purchase money paid therefor, as on a rescission, would have passed to the assignee as an incident of the ownership of the certificate; and if such original holders, before exercising the right to rescind, assigned their certificates, the assignee, having rescinded the contract and the company having consented to the rescission, has the right to sue for the purchase money paid for the certificates, for thereby the holders intended and did in effect assign their causes of action.

2. ———: ———: **Transferable Only on Books.** An order, writing or act which shows the intention of the owner of a chose in action to transfer it so that it will become the property of the transferee will amount to an equitable assignment, if supported by a valuable consideration; and although by the terms of annuity certificates they were transferable only on the books of the insurance company, a transfer by delivery with assignments in blank indorsed

thereon, reciting that they had been made upon a valuable consideration, shows an intention on the part of the holders to transfer their respective causes of action, to recover the amount of money paid on the repudiated contract, to the person to whom the certificates were by them delivered, and estops them from hereafter asserting to the contrary.

3. ————: Limitations: Money Paid for Ultra Vires Certificates: Rescission. Even if the issuance of annuity certificates by an insurance company was *ultra vires*, it does not follow that a cause of action for the money paid for them arose in favor of the purchaser at the instant the sale was consummated. The insurance company, being a private corporation, could not repudiate the certificates on the ground they were *ultra vires*, after full performance by the purchaser, without refunding the purchase money; and until it did repudiate them the purchaser could treat them as valid and binding; and where the company never refused to make the payments provided for in the certificates on the ground that it had no power to issue them, but simply failed to pay the annuities, the five-year Statute of Limitations did not begin to run against the purchaser until he elected to rescind the contract and sue for the purchase money.

4. ————: Former Adjudication: Receivership: Cancellation of Annuity Certificates: Judicial Contracts: Parties Not Before Court. The decree of the Federal court in a receivership proceeding against an insurance company provided that if any holder of an annuity certificate issued by it failed to avail himself of the privilege thereby extended of surrendering his certificate and buying stock in the company for cash at twice its par value, within thirty days thereafter, he would be barred from making claim of any kind against the company or its assets, and his certificate would be cancelled. *Held*, that it is a matter of grave doubt whether the court, in any proceeding, with all the parties before it, could have compelled the certificate holders, against their will, to enter into new contractual relations under penalty of forfeiting rights vested under existing contracts; but it is certain the court could not annul the contract and the rights incident thereto of any certificate holder who had not been given notice of the proceeding and had not been afforded a right to be heard.

5. ————: ————: Appearance. Where the decree in the receivership proceeding recited that certain attorneys appeared for "annuity certificate holders" and it is plain therefrom that they appeared for those only who had joined the stockholders in "praying leave to re-organize and rehabilitate" the insurance company, and these did not embrace the plaintiffs in this suit against the company to

Sherman v. Life Insurance Co.

recover the money paid for their certificates, and the evidence outside the court records conclusively shows that plaintiffs herein were not parties and did not appear in that proceeding, the decree was in no sense a bar to a judgment in their favor.

6. ———: ———: ———: Class: Virtual Representation. The doctrine of virtual representation, under which one or more members of a class in specified instances are allowed to sue or defend in behalf of all, on the theory that all members of the class will be beneficially affected thereby, has no application where the class consisted of holders of annuity certificates issued by an insurance company, none of whom were parties to the original proceeding for the appointment of a receiver, either as complainants or defendants, none of whom intervened therein in any proper sense, and none of those who did appear asked, for themselves or others, for relief against any party to the suit or against any assets of the company, but all that was done by those who did appear was to ask that the court postpone confirmation of the sale of the company's assets until they could raise sufficient money to pay its debts and effect its rehabilitation, and such postponement having been granted they returned and paid into court enough money to pay the debts and thereupon the court relinquished its jurisdiction over the property and returned it to the company, the number of said reorganization certificate holders who so appeared being about one-half the whole number, the plaintiffs not being among them.

7. ———: Estoppel: Knowledge: Acquiescences: Inducement: Assignment. Estoppel does not apply to a holder of an annuity certificate issued by an insurance company by the fact that other like holders had put up their money for the reorganization and rehabilitation but were not induced to do so either by his silence or acquiescence, although he has since been notified that such re-organization had been effected and that the decree of the court, when he was not before the court, had attempted to bind him and to cancel his certificate if he did not accede thereto; and as he is not estopped to sue for the money paid for such certificate, neither is his assignee.

8. ———: Cause of Action: Annuities: Modification of Contract: Purchase Money. Where the annuity certificates had, with the consent of the holders, been modified so as to make the annuities payable ''out of the earnings of the company'' said holders cannot recover for annuities unless they show there were earnings out of which the annuities could have been paid; but a suit to recover the purchase money paid for the certificates based on a rescission of the contracts, where the company has consented to the rescission, can be maintained.

9. ———: **Interest: Demand.** In a suit to recover the purchase money paid for annuity certificates issued by an insurance company, where the holder has rescinded the contract and the company has consented to the rescission, the holder can recover interest only from the date of demand, and demand must be both pleaded and proved; but the filing of a petition, in which there is a prayer for interest, is a demand, and plaintiff, if otherwise entitled to recover, is entitled to interest from the date suit was commenced, but not prior thereto.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED (*on condition*).

*Cooper, Neel & Wright, Leslie J. Lyons* and *Charles G. Revelle* for appellant.

(1) This suit being one for money had and received cannot be maintained by the plaintiff, and the court erred in not sustaining defendant's demurrer. Dennin v. Woodbury, 160 N. Y. Supp. 650; Schhiffer v. Seitz, 83 N. Y. 300; Pryor v. Foster, 130 N. Y. 171; Love v. Van Every, 18 Mo. App. 203; Steele v. Frazier, 139 Mo. App. 338; Mullinax v. Lowry, 140 Mo. App. 45; Engine Co. v. Gas Engine Co., 49 Fed. 68; Bernays v. Wurmb, 4 Mo. App. 231. (2) The annuity certificate holders, including plaintiff and his assignors, were in court and bound by the decree in the case of Wagstaff v. Great Western Life Insurance Company, (a) as a matter of actual representation; (b) because of community fund; (c) by class representation, and the court erred in not so holding. Cochran v. Thomas, 131 Mo. 279; Cloyes v. Middlebury Elec. Co., 66 Atl. 1039; 30 Cyc. 140; Wallace v. Adams, 204 U. S. 425, 51 Law Ed. 547; Phoenix Ins. Co. v. Schultz, 80 Fed. 337; Hodges v. Nalty, 104 Wis. 464, 80 N. W. 726; 30 Cyc. 132; Ins. Co. v. Dennie, 88 Fed. 160, 167; 15 Ruling Case Law, pp. 1024, 1025, secs. 499, 500; Lilly v. Tobbien, 103 Mo. 488; Accord v. Beaty, 244 Mo. 132; Sparks v. Clay, 185 Mo. 408; Buckner v. Buckner, 210 S. W. (Mo.) 887; 20 R. C. L. pp. 669 to 672, secs. 9 to 11.

(3) The demurrer to the petition and the demurrer to the plaintiff's evidence should have been sustained for the reason that the petition does not state any cause of action and the evidence does not disclose any cause of action against the defendant, and the court erred in not so ruling. Johnson v. Reed, 9 Mass. 78, 6 Am. Dec. 36. (4) Plaintiff is estopped to deny that he is bound by the decree of the United States Court in the Wagstaff case, and the court erred in not so holding. Cochran v. Thomas, 131 Mo. 258, 279; Sheets v. Ramer, 145 N. W. 788; Cronan v. Woolf, 164 N. W. 1019; Johnson v. Gillett, 168 Pac. 1029; Burlen v. Shannon, 99 Mass. 200, 96 Am. Dec. 733; Jackson v. Industrial Board, 117 N. E. 705; Watkins v. Crenshaw, 59 Mo. App. 193; Scoffins v. Grandstaff, 12 Kan. 365. (5) The original annuity certificate holders, the assignors of plaintiff, having had notice of the proceedings in the Federal court in the Wagstaff case, are bound thereby, had no right or cause of action to transfer by assignment, and the court erred in not so holding. Kent v. Quicksilver Mining Co., 78 N. Y. 156; Halstead v. Forrest Hill Co., 109 Fed. 820. Presumptively notices mailed them at their addresses reached them. Phoenix Ins. Co. v. Schultz. 80 Fed. 343; Watson v. Richardson, 80 N. W. 409; Casco Natl. Bank v. Shaw, 10 Atl. 67; Natl. Masonic Acc. Assn. v. Burr, 77 N. W. 1099; Davidson S. S. Co. v. U. S., 142 Fed. 318; Henderson v. Coal & Coke Co., 140 U. S. 25, 35 L. Ed. 332; McFarland v. Accident Assn., 24 Mo. 213. (6) The alleged cause of action sued on in this case is barred by the Statute of Limitations, and the court erred in not so holding. Johnson v. Smith, 27 Mo. 593; Parker-Washington v. Dennison, 267 Mo. 209; Merrill v. Town of Monticelli, 66 Fed. 165; Roberts v. Ely, 20 N. E. 606; Trimmer v. City of Rochester, 31 N. E. 255; Sioux City Ry. Co. v. O'Brien County, 92 N. W. 857; Scott v. County of Chickasaw, 3 N. W. 820; Jefferson Co. v. Burlington Co., 23 N. W. 899; Hunt v. Burt, 22 Ga. 129; Mfg. Natl. Bank v. Bank, 128 U. S. 26, 32 L. Ed. 343; Parks v. Salterthwaite, 32 N. E. 82; Brunson v. Ballow, 29 N. W. 795. (7)

The judgment in favor of the plaintiff cannot stand because no proper assignment of the certificates to plaintiff was shown. Mechanics Bank v. Bank, 45 Mo. 516. (8) In no event was plaintiff entitled to any judgment in this case on Counts 8, 9, 10, 11 and 12, and the court erred in not so holding, and erred in entering judgment on said counts. (9) The court erred in any event in entering judgment on the following counts: 35, 41, 70, 71, 72, 45, 63, 46, 60, 8, 10 and 12, for the reason that the holders of the original certificates thereof consented in writing to the certificates being amended to provide that any payment thereunder should only be out of the earnings of the company. (10) The court in any event erred in entering judgment on counts 209, 205, 210, 212, 214, because from the testimony and evidence it appeared that the holders thereof had actual notice of the proceedings in court and the reorganization of the company and were bound by the decree of the court in the Wagstaff Case.

*Thad B. Landon, Atwood, Wickersham, Hill & Popham* and *William Thomson* for respondent.

(1) The plaintiff was authorized to maintain the suit, and the pleadings and evidence sustained plaintiff's right to judgment. (a) The plaintiff as assignee of the annuity certificates, became vested with all the rights and remedies possessed by the assignors, and remedies that accrued after such assignment. Carroll v. Wright, 131 Ga. 728; Sec. 8057, R. S. 1909; 6 R. C. L. p. 925, sec. 310; 2 R. C. L. 633, 634, sec. 43; 2 Am. & Eng. Ency. of Law, 1079-1084; Schlieman v. Bolen, 30 N. W. 879; Oneida Bank v. Ontario Bank, 21 N. Y. 490; Shoe Co. v. Prylinski, 60 N. W. 969; 4 Cyc. 20, 69; Woodland Co. v. Mendenhall, 82 Minn. 483, 85 N. W. 164; Henson v. Smith, 138 Cal. 216, 71 Pac. 180; Ramsey v. Johnson, 8 Wy. 58, 80 Am. St. 948; Dickson v. Merchants Elev. Co., 44 Mo. App. 498; Berry v. Chase, 179 Fed. 431; Commonwealth Steamship Co. v. Ship Building Co., 197 Fed. 780-796;

In re Levin, 173 Fed. 120. (b) The appellant by its actions and conduct is estopped from raising the proposition of incapacity. Powell v. Railroad Co., 255 Mo. 420, 454. (c) Assuming that the plaintiff, being the assignee, had not the legal capacity to sue, the appellant waived such incapacity. Secs. 1800, 1804, R. S. 1909; Baxter v. St. Louis Transit Co., 198 Mo. 1, 95 S. W. 856; Wright v. Wayland, 182 S. W. 928; Gregory v. McCormick, 120 Mo. 657. (d) The pleadings and the evidence and the understanding of the parties are sufficient to constitute plaintiff the trustee of an express trust, and in such capacity, he was entitled to maintain the action. Secs. 1729, 1730, R. S. 1909; West Plains Bank v. Edwards, 84 Mo. App. 462; Beattie v. Lett, 28 Mo. 596; Guerney v. Moore, 131 Mo. 650, 668; Coffman v. Ry. Co., 183 Mo. App. 622, 167 S. W. 1053. (2) The decree of the United States Circuit Court in the Wagstaff Case made August 27, 1908, was null and void, so far as the parties mentioned in the petition in this case are concerned, for the following reasons: (a) The court did not have jurisdiction of the parties. (b) The court had no jurisdiction of the subject-matter. (c) The decree as rendered transcends the authority of the court in such cases. (d) The decree was in violence of the Fifth Amendment to the Constitution of the United States which prohibits the taking of property without due process of law. (e) The parties in interest in this case never assented to the making of the agreement with the so-called "organization committee." (f) The court had no power or authority to compel the parties to cancel their contract as represented by the certificates, and to assent to and enter into another and a different contract. (g) The decree as rendered was in no way justified by the pleadings in the case, and therefore was absolutely null and void. Sec. 737, R. S. U. S; Sec. 1101, 36 Stat. at Large; 5 Fed. Stat. Ann. (2 Ed.) 482; U. S. Sup. Ct. Equity Rules. 47, 48; Shields v. Barrow, 58 U. S. 130, 15 L. Ed. 158; Minn. v. Northern Securities Co., 184 U. S. 199, 46 L. Ed. 515; Reynolds v. Stockton, 140 U. S. 254,

35 L. Ed. 464; Washington Packet Co. v. Sickles, 65 U. S. 24, 16 L. Ed. 650; Texas & Pacific Ry. Co. v. Johnson, 151 U. S. 81, 38 L. Ed. 81; Hovey v. Elliott, 167 U. S. 407, 42 L. Ed. 215; 3 Cook on Corporations (6 Ed.), p. 3180; Jackson Co. v. Gardner Inv. Co., 200 Fed. 113; Ervin v. Oregon Railroad, 27 Fed. 625; Utley v. Donaldson, 94 U. S. 29, 24 L. Ed. 54; Hollister v. Stewart, 111 N. Y. 644; Canada Railroad v. Gebhardt, 109 U. S. 527, 27 Law Ed. 1020; Gilfillan v. Union Canal Co., 109 U. S. 401, 27 L. Ed. 977; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914. (3) The judgment in the Wagstaff Case being void, the plaintiff in this case is not estopped by reason thereof, nor is he estopped by his conduct. See authorities under Points 1, 2 and 4. (4) The annuity certificate holders were not parties to the Wagstaff Case, and were not bound because they had notice thereof, if they did, and are not estopped from attacking the decree. Authorities supra; Givens v. Harlow, 251 Mo. 242; Jewett v. Boardman, 181 Mo. 647; Pomeroy's Equity Jurisprudence (3 Ed.) sec. 812; Thompson v. Lindsay, 252 Mo. 76; De Lashmutt v. Teetor, 261 Mo. 443. (5) There was a proper assignment of the certificates so far as this action is concerned, sufficient to authorize plaintiff to maintain the suit. (6) Appellant is estopped from raising the proposition of *ultra vires*. The contracts were fully performed by each and every of the annuity certificate holders, and partially performed by the Insurance Company. 5 Fletcher's Ency. Corp., secs. 1539, 1543; Goodland v. Bank, 74 Mo. App. 365; First Natl. Bank v. Guardian Trust Co., 187 Mo. 494; Cass County v. Mercantile Town Mutual, 188 Mo. 13. (7) Appellant did not plead *ultra vires,* and is now estopped from raising the same. It did not rely thereon. Millinery Co. v. Trust Co., 251 Mo. 553. (8) Appellant is further estopped from raising the question of *ultra vires* because at no time did either it, or its predecessor, offer to return the money which appellant now admits was wrongfully obtained. 3 Fletcher's Ency. Corp., secs. 1602, 1603; First Natl. Bank v. Guardian Trust Co., 187 Mo.

494. (9) Assuming the correctness of appellant's con-
tention that the certificates were *ultra vires,* the Statute
of Limitations did not commence to run on the action for
money had and received (which appellant suggests would
have been a proper remedy), until after the appellant,
or its predecessor, had repudiated the contract because
of its *ultra vires* character. Merrill v. Town of Monti-
cello, 72 Fed. 462; Geer v. School District, 111 Fed. 682;
Chapman v. Douglas Co., 107 U. S. 348, 27 L. Ed. 378;
Collins v. Thayer, 74 Ill. 138. (10) The assignee of a
contract or obligation is authorized to maintain an action
for money had and received where the contract has been
repudiated by the corporation because *ultra vires,* and
this being true, an assignee of a contract would certainly
have the right to rescind and recover back the moneys
paid thereon. Wilson v. Drainage Dist., 257 Mo. 282;
Louisiana v. Wood, 202 U. S. 294, 26 L. Ed. 153; Parkers-
burg v. Brown, 106 U. S. 487, 27 L. Ed. 238; Chelsea Bank
v. City of Ironwood, 130 Fed. 140; Board of County
Commrs. v. Irvine, 126 Fed. 689; Geer v. School Dist., 111
Fed. 682.

RAGLAND, C.—This is a suit for money had and
received growing out of the issuance and sale by the
Great Western Life Insurance Company of what it
denominated annuity certificates.

There is no substantial controversy as to the facts.
In the year 1906 there was organized under the laws of
the State of Colorado a corporation known as the Great
Western Agency Company, with an authorized capital
of two million dollars. This company acquired an ad-
vantageous contract with an insurance company of Ind-
iana, extending over a long period of time. Thereupon the
stock in the Agency Company was sold to a great many
persons, and through such sales funds were accumulated
in its treasury to the amount of something like $80,000.
Thereafter, in 1907, the same individuals who had effect-
ed the incorporation of the Agency Company and who were
in control of it, organized an insurance company under

the laws of this State, called the Great Western Life Insurance Company, with a capital stock of $100,000. Through their manipulation the Agency Company borrowed $21,000, and with that and the $80,000 in its treasury it paid up the entire capital stock of the Insurance Company.

Eight of the one thousand shares of such stock the incorporators held in their own names as individuals, and the remaining nine hundred and ninety-two shares they held as trustees for the Agency Company. It became merely a holding company.

During the first year following its incorporation the Great Western Life Insurance Company wrote thirteen million dollars of insurance. The premiums received therefor were absorbed by commissions and overhead expenses. Desiring to raise more funds for the prosecution of its business, it conceived the idea of issuing what it later termed annuity certificates—such certificates to represent one or more shares in the proceeds arising annually from a certain part of the premiums received by the company. The certificates issued contained the following recitals:

"Whereas, . . . . . . . . . . . . . has paid to the company, for . . . . . . . . . of its said shares, the sum of $. . . . . . . .

"Now, therefore, in consideration of the premises, the company hereby agrees to apportion and pay to the owner thereof an annuity during his life and thereafter to his heirs or personal representatives, of ——— shares of the proceeds of twenty five cents per one thousand dollars of all insurance, except reinsurance, written by the company in the United States for fifty years from the date of its incorporation, on which premiums computed on the annual basis have been received in cash, and also for so long thereafter as premiums are received on said insurance; such annuity to be determined as follows:

"1. The aggregate of said twenty-five cents per one thousand dollars of insurance shall be ascertained at the end of each calender year, and such sum divided by

fivehundred; the quotient obtained shall be the apportionment to each of said shares, and the total of ——— shares thereof shall be the annuity payable hereunder, within thirty days thereafter.

"2  The company guarantees that the first annuity payable hereunder shall not be less than eight per cent upon the amount paid the company therefor, as stated above.

"3.  This certificate is assignable in writing and transferable, only on the books of the company, in person or by attorney, upon presentation of this certificate at the home office of the company."

The certificates were sold on the basis of $150 per share. They were issued by the company in 1907. The first annuity or dividend on them became due February 1, 1908, and was duly paid.

On May 11, 1908, certain stockholders of the Great Western Agency Company filed a bill in equity in the Circuit Court of the United States for the Western Division of the Western District of Missouri against the Great Western Agency Company, the Great Western Life Insurance Company, and certain individuals, such bill alleging mismanagement of the Great Western Agency Company and the Great Western Life Insurance Company, and complaining of the issuance by the Great Western Insurance Company of these annuity or investment certificates, it being charged that they had been sold in a large number, the amount being something like $330,000, and further that an attempt was being made to increase the capital stock of the Great Western Life Insurance Company and prayer was made for the appointment of a receiver to take charge and control of the assets and property of the Great Western Agency Company and of the Great Western Life Insurance Company. A receiver was appointed as prayed. The court also appointed a master in chancery, who in pursuance of the order appointing him, gave notice that all claims and demands held by any person, company or corporation against either of the companies in the hands of the re-

ceiver should be presented to him as such master for a hearing on or before Octorber 1, 1908, or the same would be forever barred.

On July 6, 1908, the court made an order directing its receiver to advertise and sell the property and assets of the Great Western Life Insurance Company. In response to the published notice calling therefor, three bids were filed with the receiver. That of the Kansas City Life Insurance Company was deemed the best by him, and on July 28, 1908, he reported a sale to that company and asked its confirmation by the court. Under the terms of the proposed sale the Kansas City Life Insurance Company would have assumed the obligations of the Great Western Life Insurance Company under the latter's contracts of insurance, but not its undertakings under the annuity certificates; and from the cash that was to be paid, the receiver would have realized only about $125,000 for the payment of debts and distribution among the stockholders of the Great Western Agency Company (hereinafter called the stockholders). As the indebtedness alone, excluding the annuity certificates entirely from consideration, exceeded that amount, it was quite apparent that, if the sale were confirmed, the stockholders would certainly get nothing, and the certificate holders would probably be in like predicament. While the report of sale was pending some of the stockholders and certificate holders held a meeting at Topeka, Kansas, for the purpose of devising means to protect their interests. The meeting was largely attended, as were subsequent ones held in Kansas City. At one of these meetings Mr. James Chappelle was "informally designated by certain stockholders and annuity certificate holders as a sort of trustee to collect money and take such steps as might be necessary to pay the debts of the insurance company and to generally handle the situation."

The application of the receiver for confirmation of the sale coming on for hearing, a postponement was asked by some of the stockholders and certificate hold-

ers. The appearances and the order of the court made in that connection, as shown by the record, are as follows:

"Now on the fifteenth day of August, 1908, being one of the regular days of the April, 1908, term of said court, the above cause came on to be heard upon the application of the receiver for the confirmation of the sale of the assets, properties and business of The Great Western Insurance Company, in accordance with the bid of The Kansas City Life Insurance Company; the receiver, C. S. Jobes, Esquire, appearing in person and by his solicitor, E. L. Scarritt, Esquire; the Kansas City Life Insurance Company, a bidder, appearing by R. J. Ingraham, its solicitor; the Philadelphia Life Insurance Company, a bidder, appearing by W. F. Guthrie, its solicitor; the National Bank of Commerce, a creditor, appearing by H. C. Ward, its solicitor, and F. M. Pearl and other stockholders of the Great Western Agency Company and annuity certificate holders of the Great Western Life Insurance Company who are similarly situated, appearing by B. P. Waggoner and James W. Orr, said stockholders praying a postponement of said hearing, and representing to the court that the said stockholders and annuity holders were endeavoring to raise from the stockholders and annuity holders a sufficient fund to pay off all of the debts of the said The Great Western Life Insurance Company, and to meet all of its obligations and to rehabilitate and reorganize said company, and it appearing to the court that there are reasonable prospects of the accomplishment of the reorganization on such plan, and thereby secure to the creditors of said company the full payment of all of the debts or liabilities of said life insurance company.

"It is therefore considered and ordered by the court that the further hearing of the application of said receiver to confirm the sale of said property and assets of the Great Western Life Insurance Company be and the same is hereby postponed and continued until Tuesday, August 25, 1908, at nine o'clock a. m."

The order just set out indicates that the stockholders and certificate holders who appeared did not present any definite plan for rescuing the insurance company from the receivership. In connection with their application for a postponement of action on the report of sale, an affidavit of Mr. Chappelle was filed in which this appears:

"He, affiant, with other stockholders and annuity certificate holders of said company, undertook a plan of rehabilitation of the said Great Western Life Insurance Company, and to that end has, with others, conferred with a large number of the stockholders and annuity certificate holders of the said companies defendant, and also with a number of the policy holders of the Great Western Life Insurance Company. Affiant further says, as a result of such conference and investigation, there has been contributed by voluntary assessments from such stockholders and annuity certificate holders, for the purpose of rehabilitating and reorganizing the defendant, The Great Western Life Insurance Company, a sum aggregating about $120,000; that he has assurance from a large number of other such stockholders, annuity certificate holders and policy-holders of their willingness to co-operate and add additional funds for said purpose and thereupon affiant believes and states the fact to be that such stock, annuity and policy-holders are now in a position to pay off and discharge all of the outstanding pressing obligations of the said Great Western Life Insurance Company, and if given reasonable time so to do, all impairment of the capital stock of said company will be repaid and said business re-established and reorganized by the stockholders, annuity and policy-holders of said company, and placed upon a substantial basis, and in position and condition to carry out and perform every outstanding obligation of the Great Western Life Insurance Company."

The plan finally adopted by Chappelle and those who were co-operating with him was that each stockholder and certificate holder should pay into a fund, to be used

in liquidating the debts and repairing the capital stock of the Insurance Company, an amount equivalent to one-fourth of the face value of the stock or annuity certificate held by him, and receive in return upon the surrender of his stock or annuity certificate, as the case might be, as much of the stock of the insurance company as his cash contribution to the fund would buy, on the basis of the latter stock being worth twice its par value. Practically all of the stockholders and from fifty to seventy-five per cent of the certificate holders acceded to the plan and participated therein by wholly surrendering their several holdings for the mere privilege of buying stock in the Insurance Company at $200 per share—twice its par value; and they paid into the ''recoganization'' fund enough money to pay for $130,000 worth of the stock on that basis, before the date to which the further hearing of the receiver's application for confirmation of the sale had been continued. On August 27, 1908, they presented their plan to the court; it was approved; and after directing the payment of the $130,000 and other funds into the hands of a custodian to be by him applied to the payments of the debts, a schedule of which was therein set out, the court by its decree lifted the receivership and ordered the receiver to re-deliver to the insurance company its property and assets. ·

The recitals and provisions of the decree discharging the receivership, having a bearing on questions presently to be considered, are as follows:

''Now on this 27th day of August, 1908, being one of the regular days of the April, 1908, term of said court, came on further to be heard the objections and exceptions of F. M. Pearl and other stockholders of The Great Western Agency Company and annuity certificate holders of The Great Western Life Insurance Company to the confirmation of the sale of the assets, properties and business of said Great Western Life Insurance Company heretofore made by the receiver hereof, complainants appearing by John H. Atwood, Esq., and H. C. Timmonds, Esq., said receiver appearing in person and by E.

L. Scarritt, Esq., and Frank P. Sebree, Esq, his solicitors; the Kansas City Life Insurance Company, a bidder at said sale, appearing by Charles M. Howell, Esq., and Frank Smith, Esq., its solicitors; Franklin Adams, J. Q. Cowes and other interveners appearing by A. L. Cooper, Esq., their solicitor; said objectors appearing by E. A. Berry, Esq., James W. Orr, Esq., their solicitors;—Hess appearing by Hunt C. Moore, Esq., his solicitor, and A. F. Sherman, Esq., appearing for himself and certain other annuity certificate holders.

"And said objections and exceptions being presented to the court, and said objectors praying leave to reorganize and rehabilitate the said Great Western Life Insurance Company and to pay its debts, outstanding obligations and take over its properties, moneys, credits and effects and restore and make good any impairment of its capital stock and thereafter conduct the business of the said Great Western Life Insurance Company; and all parties being before the court and being heard and the court being fully informed and advised, it is considered, ordered and decreed:

"1. That the plan for the reorganization and rehabilitation of the said Great Western Life Insurance Company presented to this court be, and the same is, hereby approved by the court, upon the following terms and conditions, viz:. . . .

"Whereas it has further been the plan of the said reorganization of the said Life Insurance Company to permit holders of so-called annuity certificates heretofore issued by the said Life Insurance Company, upon the payment of the sum of $37.50 upon each share of such certificates and upon the surrender and cancellation of such certificates to receive of the capital stock of the said Life Insurance Company stock of the said company of the par value equal to one-half of the amount of such payment.

"Certain certificate holders have already agreed to this, aggregating more than one-half thereof, and all such annuity certificate holders who have not so done

are hereby given the privilege of so doing for twenty days from date hereof, to avail himself of such privilege, and any such annuity certificate holder failing to so avail himself within such period of time of twenty days from this date shall no longer have such privilege or right, and such annuity certificate holders shall thereafter be barred and estopped from making any claim of any kind whatsoever against said Life Insurance Company or officers or stockholders thereof, or against any assets of said company, and such annuity certificates will then and thereby be fully canceled in law and in equity, and such annuity certificate holders will have no further rights, claims or demands against said company, its officers, stockholders, assets or property on account thereof."

At the time of rendering the decree the court informally expressed its views somewhat at length in regard to what it considered the anomalous position of the certificate holders. Among other things, the court in effect said that such holders were neither creditors in the sense that they were entitled to have their certificates liquidated by a cash payment, their present worth not being ascertainable, nor were they stockholders; that the issuance of the certificates was possibly *ultra vires* the Insurance Company; that in any event the legal rights, if any, of the holders of these certificates were so intangible that it would be impossible for the court to afford such holders relief through the usual modes; and that, all things considered, the offer of the stockholders to permit them to share in the plan of rehabilitating the company was a privilege of which they should be glad to avail themselves. A circular letter embodying these expressions of the court, together with a copy of the decree, was immediately mailed to each certificate holder. Thereafter a few more of them surrendered their certificates and bought stock on the basis provided for in the decree. The remainder of the stock was later sold to outside parties at $200 per share and the proceeds of such sales were paid into the treasury of the insurance company.

Upon the lifting of the receivership and the return to it of its property and assets, the Great Western Life Insurance Company at once resumed its business of writing life insurance. It continued so to do until its merger with defendant, International Life Insurance Company, December 7, 1912. By the articles of consolidation the defendant assumed and agreed to pay all of the debts, liabilities and obligations of the Great Western Life Insurance Company. The claims of the latter's annuity certificate holders were sepecifically referred to therein, and the defendant agreed to pay the annuities provided for in such certificates or refund the amounts paid for them, if they were held by this court to be valid obligations of the Great Western Life Insurance Company at the time of the merger.

The holders of the certificates who did not surrender them and accept stock in accordance with the provisions of the decree discharging the receivership took no steps whatever looking to an enforcement of any claims under their certificates until about the time of the merger of the Great Western Company with defendant. During the interim between the receivership and the merger they made no demands of any kind on the former company, nor did it on its part do anything to indicate that it would not carry out the undertakings provided for in the certificates—except that it failed to pay any of the annuities. However, on February 22, 1913, the plaintiff wrote the defendant the following letter:

"International Life Insurance Company,

St. Louis, Mo.

"Gentlemen:

"As attorney for these persons, a list of whose names are hereto attached and made a part hereof, each and every of whom are the owners and holders of certain so-called annuity or investment certificates issued by the Great Western Life Insurance Company of Kansas City, Missouri, I hereby demand the performance of said contracts by said International Life Insurance Company, and the payment of each annuity due under such certificates.

"As attorney for each and every of such persons, I hereby advise you that unless the terms of said so-called annuity or investment certificates are fully and completely complied with according to the terms thereof, by said International Life Insurance Company, on or before the seventh day of March, 1913, you are to consider this as a notice that each and every of such owners and holders of said so-called annuity or investment certificates, rescind and cancel each and every of said certificates, and demand the return of all moneys paid by each and every of them to the Great Western Life Insurance Company, thereon, less whatever sum or sums may have been paid to them or any of them, upon said certificates.

"As attorney for each and every of said persons, I also hereby advise you that unless the demand for the return of said money is complied with on or before the eleventh day of March, 1913, suit will be instituted to enforce the rights of my clients.

"Yours very truly,
"ADRAIN F. SHERMAN."

To this letter defendant replied: "Your letter will be submitted to the Board of Directors at its next meeting, and you will be advised." Hearing nothing further from defendant, plaintiff instituted this suit April 1, 1913, as assignee of 112 of the annuity certificates.

The petition is in 112 counts, based on alleged causes of action arising out of the issuance of as many different annuity certificates. Each count in substance alleges the issuance of the annuity certificate therein described and the price paid for it; the payment thereon of a dividend of eight per cent February 1, 1908; and the failure and refusal of the Great Western Life Insurance Company and the defendant as its successor to further perform the contract evidenced by the certificate. The assignment of the certificate and of all rights and claims growing out of it is further averred; the prayer is for the recovery of the amount paid therefor by the original holder, less the dividend paid, with interest and costs.

The answer sets up as defenses: (1) that subsequent to the issuance of the annuity certificates they were amended by mutual consent so that the sums payable thereunder, became payable only out of the earnings of the company, and there were no such earnings; (2) that the alleged causes of action are barred by the five-year Statute of Limitations; (3) that all rights based on the annuity certificates were adjudicated by the decree lifting the receivership and were thereby canceled and discharged; and (4) that plaintiff and his assignors, by standing by and acquiescing in said decree and permitting, without protest on their part, the stockholders and remaining certificate holders to effect a reorganization of the company, by paying into the treasury thereof, as capital and purchase price of the assets, sums of money aggregating more than its capital stock and equal to or in excess of the actual and market value of all the property and assets of the company, free from any claim against it on account of said annuity certificates, are now estopped from asserting any such claims.

The reply puts in issue the affirmative matters of the answer. It specifically denies that plaintiff's assignors appeared or were made parties to the proceeding which culminated in the decree which attempted to dispose of the rights of all certificate holders.

At the trial it was stipulated: that "prior to the institution of this suit the holders of the annuity certificates shown on the attached list assigned the same to the plaintiff, who thereupon became and has continued to be the owner and holder thereof." The stipulation covered all certificates now in question, except those described in counts 8, 9, 10, 11 and 12 of the petition. The five certificates referred to in those counts were originally issued to George Kumpf and four members of his family respectively. The certificates were produced at the trial by plaintiff and each had indorsed on it an assignment in blank over the signature of the persons to whom it had been issued. Kumpf, on the witness stand, identified the signatures of these assigments. He and the four members of his family were named in the list of cer-

tificate holders for whom plaintiff professed to be acting as attorney in his communication to defendant of February 22, 1913.

The cause was tried without a jury. A number of the counts of the petition were voluntarily dismissed during the progress of the trial; the court found for plaintiff on all remaining counts and assessed his recovery under each at the amount that was paid for the certificate therein described, less eight per cent of such amount, with six per cent per annum interest thereon, from February 22, 1913. The aggregate amount of the judgment was $47,463.90. Defendant appeals.

Other facts will be stated in the course of the opinion, if deemed necessary to an understanding of the questions considered.

The questions raised on this appeal were passed upon by the trial court in refusing declarations of law asked by defendant—appellant here. Its principal contentions are: (1) that the assignments of the annuity certificates did not operate as assignments of causes of action for money had and received; (2) that such causes of action, if they ever existed, are barred by the five-year Statute of Limitation; (3) that plaintiff's claims are *res adjudicata* under the decree of the United States Circuit Court lifting the receivership ; and (4) that having acquiesced in the decree during the time of the reorganization of the insurance company and for four years thereafter plaintiff's assignors and plaintiff through them, are now estopped from asserting that its provisions are not binding upon them.

I. It is admitted that prior to the institution of the suit the plaintiff became the "owner and holder" of all the certificates for which he seeks a recovery
**Assignment of Cause of Action.** of the purchase money, except five. It is elementary that if the insurance company which issued the certificates had, after receiving the full purchase price, repudiated the contracts evidenced thereby on the ground that they were *ultra vires,* or had

for any other reason or for no reason at all refused to perform such contracts without the consent of the other parties thereto, an original holder of any one of such certificates would have had the option to sue for the sums payable under his certificate, or to treat the contract as rescinded and sue for recovery of the money paid for it. [6 R. C. L. sec. 310.] If after such repudiation by the insurance company, an original holder, without having elected to rescind, had assigned his certificate, the right to recover the purchase money therefor, as on a rescission, would have passed to the assignee as an incident to the ownership of the certificate. [Parkersburg v. Brown, 106 U. S. 487.] The technical difficulty presented on the facts in proof, however, is that the right to rescind seems to have been exercised by the original holders before they assigned the certificates to plaintiff. On February 22, 1913, through their attorney they notified defendant that they rescinded and canceled each and every said certificate and demanded the return of all moneys paid for each and every of them—unless the terms of the certificates were fully complied with on or before March 7, 1913. The defendant acknowledged the receipt of the notice, but said and did nothing more. Its assent to the rescission was, therefore, implied. The contracts embodied in the certificates thereupon ceased to exist, and in lieu of such contracts there arose an obligation on the part of the insurance company to return the several sums of money paid for them. While the certificates at the times of their respective assignments represented contracts no longer in existence, yet they retained an evidential value in support of the causes of action which arose out of the cancellation of the contracts. But otherwise they were wholly worthless. It cannot be supposed, therefore, that the holders of the certificates by their assignments of them to plaintiff intended to invest him with title to the papers merely, while retaining the causes of action of which they afforded in part the sustaining proof and apart from which they were wholly without value. It seems en-

tirely clear that the assignments of the certificates were intended to effect, and did effect, assignments of the causes of action to which plaintiff is asserting title by this suit.

As to the five certificates issued to Kumpf and family, which were not included within the stipulation, appellant points out that by the terms of the certificates they were transferable only on the books of the company, whereas the transfers of these certificates · were attempted to be effected through their delivery with assignments in blank indorsed on them. If the passing of the legal title to the certificates as subsisting contracts was the question at issue, appellant's position would no doubt be well taken. But plaintiff on the contrary is claiming title to the causes of action that arose upon the rescission of those contracts. In this connection the rule is that any order, writing or act which shows the intention of the owner of a chose in action to transfer it so that it will become the property of the transferee, will amount to an equitable assignment if sustained by a valuable consideration. And it is said that the test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be the assignee. [2 R. C. L. p. 614, sec. 21; Wilson v. Drainage Dist. 257 Mo. 266, 282, 283.]

The certificates in question were in the possession of the plaintiff after the rescission of the contracts evidenced by them; each had indorsed on it over the signature of the original owner an assignment in blank which recited that the assignment had been made upon a valuable consideration; and the original owners knew that plaintiff was suing in his own name to recover the money severally paid by them to the insurance company for their certificates—George Kumpf testified as a witness for plaintiff. These facts are sufficient, we think, to show an intention on the part of the original holders of the five certificates to transfer their respective causes of action to plaintiff and to estop them from hereafter asserting the contrary.

II.   Appellant's contention that plaintiff's suit is barred by the five-year Statute of Limitations is based on the view that issuance of the annuity certificates by the insurance company was *ultra vires,* and that causes of action for money had and received accrued in favor of those who purchased the certificates, if at all, at the times respectively of the issuance of the certificates and the payments of the purchase money.   But appellant's premises are not sound.   Even if the issuance of the certificates was *ultra vires,* it does not follow that a cause of action for money had and received arose in favor of the purchaser of one of them at the instant the sale was consummated.   The insurance company was a private, not a public, corporation; the issuance of the annuity certificates by it was neither *malum in se,* nor *malum prohibitum;* and it could not, therefore, refuse to perform the contracts evidenced by them on the ground that they were *ultra vires,* after full performance by the purchasers, without refunding the purchase money.   [First National Bank v. Guardian Trust Co., 187 Mo. 494; Smith v. Richardson, 77 Mo. App. 422; 3 Fletcher's Enc. of Corp., secs. 1602 and 1603.] And until it did repudiate them the purchasers of the certificates could treat them as valid and binding. [Chapman v. County of Douglas, 107 U. S. 348; Geer v. School Dist., 111 Fed. 682.]   As a matter of fact the Great Western Life Insurance Company never at any time refused to make the payments provided for in the certificates on the ground that it had no power to issue them, nor did the defendant ever raise any question in that respect until it filed its brief in this case—doubtlessly because it knew that it could not do so, without offering to repay the purchase money.   The Great Western Company and the defendant as its successor simply failed to pay the annuities called for by the certificates. The contracts represented by the certificates were continuing contracts and after the insurance companies had failed for a considerable period of time to perform the holders of the certificates elected to treat the contracts

*Limitations.*

as abandoned, as they had a right to do. And until they made such election no cause of action accrued for money had and received. [Chapman v. County of Douglas, supra.] It follows that plaintiff's several causes of action were not barred by the Statute of Limitations invoked by defendant.

III. The decree of the Circuit Court of the United States in the receivership preceeding provided that if any annuity certificate holder failed to avail himself of the privilege thereby extended of surrendering his certifi-

Res Adjudicata.        cate and buying stock in the insurance com-
pany for cash at twice its par value, within twenty days thereafter, he would be barred from making claim of any kind against the company or assets, and his certificate would thereupon be canceled. This provision, according to appellant's insistence, canceled the annuity certificates that were not surrendered according to its terms and extinguished all rights incidental to their ownership long prior to their assignment to plaintiff. It is a matter of grave doubt as to whether the court in any proceedings, with all the parties before it, could have compelled the certificate holders against their will to enter into new contractual relations under penalty of forfeiting rights vested under then existing contracts. But of this there can be no doubt; it could not annul the contracts and the rights incident thereto of any who had not been given notice of the proceeding or had not been afforded an opportunity to be heard. [Windsor v. McVeigh, 93 U. S. 277.] And whether plaintiff's assignors were in court and were heard in connection with the rendition of the decree is the essence of the controversy at this point. Appellant insists that they were in court because the record recites their appearance. From this recital it is argued that they either actually appeared by counsel, or were there under the rule of class representation.

Without again setting out its language, it is sufficient to say that a reading of the decree as a whole makes it

plain that Berry and Orr, the solicitors who appeared for "annuity certificates holders" in the receivership proceedings appeared for those only who had joined the stockholders in "praying leave to reorganize and rehabilitate" the insurance company, and that these constituted but little more than half of the whole number. The names of the individuals, other than F. M. Pearl, who so appeared are nowhere disclosed. There is, therefore, nothing in the record that precludes plaintiff from asserting that his assignors did not appear to the proceeding by counsel, and the evidence outside of the record just referred to conclusively shows that they did not appear either in person or by counsel.

Under the doctrine of virtual representation one or more members of a class in specified instances are allowed to sue or defend in behalf of all on the theory that all the members of the class will be beneficially affected thereby. On the facts in proof in this case, however, it is not conceiveable on what theory that doctrine can be invoked to make the decree discharging the receivership effectual as against the certificate holders who were not actually before the court. None of the certificate holders were parties to the original proceeding for the appointment of a receiver, either as complainants or defendants. Nor did any of them intervene therein in any proper sense of that term. Those of them who did appear during the progress of the proceeding did not ask for themselves, much less the others, any relief against any of the parties to the suit or against the assets of the insurance company. The situtation was simply this: The court's jurisdiction thereto having been properly invoked, it had taken into its custody the property of the insurance company; it then had the further jurisdiction to sell the property, determine who were entitled to share in the proceeds thereof, settle priorities and make distribution accordingly. It had no other power in the premises except such as was purely incidental to these. After the court had proceeded in the exercise of this jurisdiction to a point where the receiver's report of

the sale of the assets was pending before it, some of the certificates holders, who for want of a better term will be designated the reorganization certificate holders, in conjunction with some of the stockholders, appeared before the court and in substance said, according to Mr. Chappelle's affidavit: We have been conferring with the stockholders and certificate holders and we are confident that if the court will postpone confirmation of the sale and give us further time, we can raise sufficient funds to pay the debts of the insurance company and put it on its feet as a going concern; we ourselves have voluntarily contributed $120,000 to a fund to be used for that purpose, and we believe that other certificate holders with whom we have not yet had an opportunity to confer will agree to cooperate with us. A postponement for ten days was thereupon granted. At the end of that time the reorganization certificate holders again appeared before the court and in effect said: We constitute more than fifty per cent of the certificate holders and others may yet join us, but whether they do or not, we and the stockholders have raised amoung ourselves $130,000, which we now bring into court, and, as that is a sufficient amount to rehabilitate the insurance company and pay its debts, we ask that you relinquish your jurisdiction over the property and return it to company. And that is what the court did. It seemed obvious, therefore, that the reorganization certificate holders in asking the court to approve their plan for rehabilitating the company did not assume or purport to act for any one except themselves and such other certificate holders as voluntarily chose to come in with them, and that the only relief they sought at the hands of the court was that they and other volunteers be permitted to pay the debts of the company and thereby secure the release of its property. Assuredly they did not represent or assume to represent the many certificate holders who were then and there refusing to surrender their certificates and pay cash for stock in the insurance company on the basis of two dollars for one of par value, or to

have anything to do with the so called reorganization plan. These nonconsenting certificate holders were never represented by anyone, nor were they ever afforded an opportunity to be heard, on the proposition that they must give up their certificates and buy insurance company stock, or else their certificates would be canceled anyway. Certainly, on this question they never had their day in court either personally or through virtual representation. The decree, therefore, in so far as it attempted to cancel their certificates and destroy the rights incident thereto, was a nullity.

IV. Appellant's next contention is that the original certificate holders, plaintiff's assignors, having had notice of the proceedings in the Federal court in the Wag-

**Estoppel.** staff Case are bound thereby and had no right or cause of action to transfer by assignment. Its position in this respect is more fully stated in the following language of its brief: ''These annuity certificate holders knew that the court was taking the position that they were in court and that their annuity certificates were being affected by this decree. They knew therefrom that other annuity certificates holders similarily situated were putting in new money to rehabilitate and reorganize this company, and yet they made no motion to set aside the decree or reconsider the same or any objection thereto, or appeal therefrom, and having notice of these proceedings and all the details as disclosed from this mail matter (the copy of the decree and the circular letter embodying the court's views expressed at the time of rendering the decree), if they undertook to assert any right, as plaintiff is here, would have been estopped to do so.'' The difficulty that appellant encounters here is that the certificate holders who put in new money to rehabiliate and reorganize the company were not induced to do so by the silence of plaintiff's assignors or their apparent acquiescence in the court's views or in its decree. They had put in their money before the decree was made or the views were

expressed; when they did not know whether all the certificate holders would come in or not and regardless of whether they did or not. One hundred and thirty thousand dollars worth of the stock had been bought by them (subject of course to the release of the company's assets) before the decree was entered or its provisions known; the remaining $70,000 worth was sold for the most part to outside parties; who they were, when they bought, and whether they had any knowledge of the provisions of the decree is not shown. One thing is certain and that is that the defendant at the time it took over the business and property of the Great Western Company knew that these claims were outstanding against it. In truth they were being so vigorously pressed that the State Superintendent of Insurance compelled recognition of that fact in the articles of merger. The essential elements of an estoppel such as is contended for are entirely lacking. Of course the plaintiff stands in the shoes of his assignors as to the claims assigned to him, and he is no more estopped from asserting them than they would have been.

V. Thirteen of the certificates that were assigned to plaintiff had prior to their assignment been amended by the Great Western Life Insurance Company with

Cause of Action. the consent of the respective holders so that the annuities under them were payable "out of the earnings of the company." Plaintiff made no attempt to show that there were any "earnings" out of which the annuities under these certificates could have been paid. Appellant insists that plaintiff's failure in that respect is fatal to a recovery by him under the counts based on causes of action growing out of such certificates. The position would be impregnable if this were a suit to recover the annuities. But it is a suit to recover the purchase money paid for the certificates based on a rescission of the contracts represented by them, and as already pointed out appellant consented to the rescission. The contention is without merit and is disallowed.

VI. Appellant claims finally that the court improperly allowed interest on the several sums for which it awarded plaintiff a recovery. Under the statute (Sec. 7179, R. S. 1909) plaintiff was entitled to interest after demand of payment, but in order for

**Interest: Demand.** him to recover it, it was necessary for him to allege and prove that he or his assignors had made such a demand. [Compton v. Johnson, 19 Mo. App. 88, 94.] However, the mere institution of the suit was itself a demand. [Trimble v. Railroad, 180 Mo. 574, 587.] The prayer in each count is for the recovery of the sum therein named "together with interest thereon," but there is nowhere in the petition an allegation of a previous demand of payment. Under such circumstances, the prayer should be construed, we think, as asking for interest from the time of the demand then being made through the institution of the suit. It follows that as the court could not award plaintiff a greater sum as interest than he asked (Wright v. Jacobs, 61 Mo. 19), it was in error in allowing interest from February 22, 1913, to April 1, 1913, the date on which the suit was commenced. The interest should have been computed from the latter date. By reason of the improper allowance of interest the judgment as a whole is excessive to the extent of $229.77. If the plaintiff will enter a *remittitur* of that sum as of the date of the judgment, within ten days, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded. *Small* and *Brown, CC.,* concur.

PER CURIUM:—The foregoing opinion of RAGLAND, C. is adopted as the opinion of the court. All of the judges concur, except *Graves* and *Elder JJ.,* who dissent.