WILLIE BELL HELM, RESPONDENT, v. BEN HUR LIFE ASSOCIATION, APPELLANT.—107 S. W. (2d) 844.

Kansas City Court of Appeals. May 24, 1937.

*A. J. Stanley* and *Burns & White* for appellant.

SPERRY, C.—Plaintiff sued defendant on a life insurance policy. Judgment was for plaintiff and defendant appeals. Defendant, in oral argument in this court, waived all assignments of error excepting the demurrer to the evidence. Therefore, no other point will be considered in this opinion.

Sidney T. Cole, who will hereafter be known as insured, was issued a policy of life insurance as of date of September 1, 1930, by Loyal American Life Association, hereafter to be known as insurer. Plaintiff was named as beneficiary. The evidence shows that insurer, although nominally known as a fraternal company, actually did business as an old line life insurance company. It did not maintain a lodge system with ritualistic form of work, or a representative form of government, and had not done so from the time this policy was issued; nor is there any pleading or evidence that it ever was admitted as a fraternal company under the laws of Missouri; and the amount of premiums were fixed and certain, as was the benefit, neither of which depended in whole or in part upon payment of similar sums by others so situated and the policy provided cash values and non-forfeiture extended insurance. Therefore, we hold the policy

to be an old line policy. [Sec. 6005, R. S. Mo. 1929; Aloe v. Fid. Mut. Life Ass'n., 164 Mo. 675, l. c. 687; Nastav v. Missouri Mut. Assn., 47 S. W. (2d) 166, l. c. 168.] The policy was issued in Missouri to a resident of Missouri, and premiums were paid to agents in Missouri. It was, therefore, a Missouri contract and is governed by our laws. [Ragsdale v. Brotherhood of Railroad Trainmen, 80 S. W. (2d) 272, l. c. 278, and they are read into and incorporated in the policy, including Sec. 5741, R. S. Mo. 1929; Cravens v. New York Life Ins. Co., 148 Mo. 583, l. c. 604.] On July 14, 1934, defendant took over all of the assets and liabilities of insurer under a contract approved by the insurance departments of Illinois and Indiana, the exact terms of the contract not being material in the view we take of the case. On July 16, or thereabouts, defendant called the Kansas City district manager of insurer to its home office and told him of the merger but did not tell him of the terms thereof. It also instructed his not to tell the policy holders of insurer about the merger but to continue collecting premiums from them as usual until the defendant sent its special representative to this district to accompany insurer's district manager to call on policy holders jointly, at which time policy holders would be told of the merger and steps would be taken to transfer them to defendant company. Pursuant to said instructions, insurer's district manager called on insured on August 4, 1934, and collected the premium due on his policy for the month of August but did not tell him of the merger. On or about August 14, 1934, defendant's special representative and the district manager of insurer called on insured and told him that the assets of the insurer had been wiped out and were gone and there was nothing left and that, because of insured's impaired health, defendant would not accept him into its company. Defendant never gave insured any other notice of the merger nor did it ever offer to take him into its company, or advise him of his rights under the merger, nor tender him any return of any part of the reserve on his policy. Insured never took any steps to be transferred to defendant and never thereafter paid any premiums on the policy. He died June 30, 1935, and plaintiff immediately notified defendant of his death and defendant's officers told her insured had no policy with it, and denied any liability whatever. Shortly thereafter plaintiff, through her attorney, wrote defendant's home office reporting death of insured and demanding blanks for making proof thereof. Defendant wrote back an equivocal letter and refused to send the blanks. Plaintiff again wrote demanding such blanks and defendant answered, refusing to furnish same, and generously offering to permit plaintiff to make inquiry of the insurance departments of Illinois and Indiana in the event plaintiff felt she was not being treated fairly.

The policy was kept in force and all premiums paid thereon for a

period of four years, including the premium paid, for the month of August, 1934. In this respect it was similar to the policy in Barthel v. Sovereign Camp, 93 S. W. (2d) 285, l. c. 288. It contained a nonforfeiture clause providing paid-up insurance for life, or paid-up extended insurance for the full amount of the policy, at the option of insured, if any, at any time after it had been in effect for two years, insured should cease to pay premiums thereon. The first premium falling due and remaining unpaid was that for the month of September, 1934, and at that time the reserve of the policy was sufficient to provide extended insurance for the full amount of the policy for two years and three hundred and twenty-seven days from September 1, 1934. Thus, but for the merger, the policy would have been kept alive until long after insured's death. The policy provided that, in the event insured ceased paying premiums thereon and did not elect the manner of converting his policy, then the company would automatically apply the cash value of the policy to the payment of premiums as same fell due until the cash value thereof was so expended in full.

The contract of insurance sued on is an old line life policy. It plainly provided for extended insurance, and for cash surrender values. This was the situation July 14, 1934, when defendant, without notifying insured, took over this policy, assumed this obligation, and took possession of all the assets that supported insured's policy. Fraudulently concealing the true state of affairs from insured, defendant told him his policy was valueless, although it then had a cash value over and above the so-called lien it claims to have established thereon without the knowledge or consent of insured. Knowing the true facts, defendant concealed them from insured and caused its agent to collect the August premium on this very policy and still retains this premium, together with the admitted surplus of assets over and above its so-called lien, which, even under defendant's admissions, was and is still due insured on account of this policy. Insurer was not in bankruptcy or under court order or supervision when defendant contracted to take over all of its assets and good will. The insurance department of the State of Missouri was not consulted. No one represented insured. Although some policy holders were accepted by defendant and issued new policies and given credit for some cash value on their old policies, insured was not among the favored to whom this opportunity was offered. Defendant suggests that it was but acting the part of a "good angel" in taking over a company that was about to go bankrupt. Its conduct toward this insured, and there were others similarly treated according to the record, is more like the conduct of a wolf wearing sheep's clothing. It took this policy, knowing its provisions, and thereafter collected one premium, which it never offered to return.

By so doing it assumed the entire liability created by the policy. By reason of its fraudulent conduct and concealment, it is estopped to set up in defense a contract, the terms of which were concealed from insured and the true situation designedly misrepresented to him.

This case differs from the recent case of Spears v. Independent Order of Foresters, No. 18888, an opinion by this court, not yet published. In that case the insured ratified the merger, surrendered his former policy and took out a policy with defendant. He then failed to pay premiums and the policy lapsed long prior to his death.

We think the case of Hall v. American Ins. Union, 27 S. W. (2d) 1076, is almost on all fours with the case at bar. In that case a merger was effected and no notice ever given to insured, who paid the defendant company his dues and assessments. Defendant pleaded that, by the terms of the merger, it did not assume *all* of the liabilities of its predecessor, just as it is contended here, and that plaintiff could not claim the benefits of the merger contract and, at the same time, refuse its burdens and limitations. But the court held that since insured received no notice of the merger, had never accepted its terms, and continued to pay dues at the old rates, defendant was liable. The only difference between that case and this one is that in the case at bar insured paid only one premium after the merger, which defendant accepted and kept, whereas in the Hall case, *supra*, insured there paid until his death. But in the case at bar the policy is an old line policy, with fixed premiums of fixed and unvarying amounts, specified death benefit, a stated cash surrender value, and a non-forfeitable extended insurance clause, all of which defendant accepted when it accepted the premium due and failed to notify insured of the merger. The extended insurance clause kept the insurance in effect until after his death without paying more premiums.

The demurrer was properly overruled and the judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. Judgment is affirmed. All concur.