Victor Brancato, Respondent, v. Ben Hur Life Association, Appellant.—128 S. W. (2d) 1108.

Kansas City Court of Appeals. May 29, 1939.

*Ira B. Burns* and *A. J. Stanley* for appellant.

*Samuel M. Carmean* and *Edw. E. Naber* for respondent.

KEMP, J.—Upon a trial of this case in Division 4 of the Circuit Court of Jackson County, there was a verdict in favor of the plaintiff for $2000, upon which judgment in said amount was duly entered. From this judgment defendant appeals.

Following our previous ruling upon this appeal, we granted defendant's motion for rehearing and in the case is now before us for our reconsideration.

This is a suit on an insurance policy issued on May 2, 1930, at

Kansas City, Missouri, by the Loyal American Life Association (here-inafter referred to as Loyal American) to one Sam Brancato, now deceased, whereby the life of Sam Brancato was insured in the sum of $2000, in consideration of the payment by him of annual, semi-annual, quarterly or monthly premiums to be made thereon as provided therein. Under an agreement dated July 14, 1934, between defendant and the Loyal American, defendant acquired all of the properties and assets of the Loyal American and, subject to the conditions of said agreement, assumed its liabilities and agreed to discharge its obligations under its outstanding policies of insurance.

The plaintiff (respondent herein) was the son of assured and was named as the beneficiary in the policy. The Loyal American was at the time of the issuance of the policy an insurance society organized and existing under the laws of the State of Illinois, with its principal office at Chicago. The assured, Sam Brancato, was at all the times herein mentioned a resident of Kansas City, Missouri. The policy was issued upon the assured's application therefor, and was delivered to him at Kansas City, Missouri, on June 21, 1930.

The policy contained a "Table of Loan Values, Paid-Up Insurance and Extended Insurance" and a provision that same was based on the National Fraternal Congress Table of Mortality, with interest at four percent, and that the reserve thereof should be computed on such basis. Premiums thereon were paid by the assured from the delivery of the policy to December 1, 1932, at which time, by reason of the default in the payment of further premiums, the provisions of the policy for extended insurance applied. At this time the reserve thereon available for extended insurance, computed according to the Table of Mortality referred to therein, was $75.36, which was sufficient to, and did, carry the extended insurance to May 21, 1935. The assured died on April 5, 1935, while, under its provisions for extended insurance, such policy was in full force and effect.

The agreement of July 14, 1934, among other things provided for the transfer of the membership of each of the members of the Loyal American holding a policy of insurance therein to the defendant, and for each of such members becoming a member of the defendant association, "provided application for such reinstatement, accompanied by payment of all amounts due, is received by the Ben Hur within 60 days from the effective date of this contract," and provided that the defendant should give notice of such agreement, by mail, to the holders of membership certificates in the Loyal American or to any assignee thereof, setting forth the details and provisions of said agreement, such notice to be addressed to such member or assignee at his last known address, as shown by the records of the Loyal American. Such notice of course was for the purpose of giving an opportunity to the members of the Loyal American to take such action as they should see fit, to best protect their interests in the premises.

There is evidence tending to show that such notice and information were timely given to the assured herein at his last known address, and there is likewise evidence that no such notice was given until long subsequent to the death of the assured. The jury, by its verdict, found that no such notice was given.

The plaintiff first learned of the agreement after the assured's death and thereupon wrote to the defendant and made inquiry concerning it, and following the course of some correspondence between plaintiff and defendant, defendant mailed to plaintiff a copy of said agreement. In this correspondence, following the death of the assured, defendant devised plaintiff that said policy had been suspended on December 1, 1932, for non-payment of premiums thereon, further stating that the provisions of the insurance contract required that the policy be continued in good standing for a period of *three years* before any reserve accumulation would be available, and that the policy was permitted to lapse prior to the completion of the third anniversary, and that hence no values had ever attached thereto. Plaintiff thereupon wrote defendant, calling attention to the fact that under the terms of the policy, reserve accumulations became available following the payment of the premiums for a two-year period, whereupon defendant replied, admitting that this was correct but denied liability on another ground, stating that under the "Reorganization Agreement" there was a 74 percent policy lien attaching to the policy, which left only an $8.80 reserve which would extend the protection 83 days, or from July 14, 1934 to October 5, 1934, and further stating that "your father passed away April 5th, this year, after the extended protection period had expired."

The petition alleges the corporate capacity of both the Loyal American and the defendant; that the defendant was engaged in the life insurance business in the State of Missouri, with its home office at Crawfordsville, Indiana; that the Loyal American had been organized and was existing under the laws of the State of Illinois and engaged in the writing of life insurance in Missouri; that the Loyal American issued and delivered said policy to the assured and agreed thereby to pay, upon the death of the assured, the sum of $2000, to the beneficiary named therein, for the consideration of the payment by the assured of the annual, semi-annual, quarterly or monthly premiums provided therein.

The petition further alleges the compliance by the assured and by the beneficiary (plaintiff herein) with all the terms, conditions and requirements of said policy upon their parts, the death of the assured on April 5, 1935, and that the policy was in full force and effect at such time. It alleges that on the 14th day of July, 1934, and while said policy was in full force and effect, the Loyal American assigned, transferred and delivered to the defendant all of its assets and property and outstanding contracts of insurance, and, in general,

its life insurance business, and the defendant then and there assumed all of the outstanding contracts of insurance which had been issued by the Loyal American and which were then in force, without notice to the assured or plaintiff, and agreed to carry out and perform the terms thereof and to continue in force said insurance contracts, and that the defendant now has in its possession all of said assets and insurance business of said Loyal American; that defendant assumed the liability upon the policy herein sued upon, which was then in full force and effect, and continued to be in full force and effect until the 31st day of July, 1935; that the assured died on April 5, 1935, whereupon said policy matured and plaintiff became entitled to the face amount thereof. It alleges notice of the death of the assured to defendant and request of the plaintiff to furnish blank forms on which to submit proofs of the assured's death, and the failure and refusal of the defendant to comply with such request, and further alleges that the defendant thereupon claimed that said policy was, not in force at the death of the assured and denied any liability under such policy, whereupon plaintiff prays judgment for the face amount of the policy, $2000, together with interest thereon.

The defendant, in its answer, alleges that it is a fraternal beneficiary corporation, organized and existing under the laws of the State of Indiana, and engaged in the business of fraternal insurance within the meaning of the law of the States of Missouri and Indiana; that the Loyal American was a fraternal insurance corporation organized under the laws of the State of Illinois. It admits the issuance and delivery of said policy of insurance to the assured named therein. There is, however, in the answer no allegation that either the Loyal American or the defendant ever qualified as fraternal societies to do business in the State of Missouri, as such, or that either was ever authorized to do business, as such, in this state. It alleges that on or about November 1, 1932, the assured permitted said policy to lapse by reason of non-payment of the premiums and that the insured was thereupon suspended as, a member of the Loyal American and that he was never reinstated as such. The answer then sets out the agreement between the Loyal American and itself, under which certain of the liabilities of the Loyal American was assumed, and by which it acquired the property and assets of the Loyal American and assumed certain of the liabilities of the Loyal American, and alleged that the assured was bound by the terms of said agreement, and that by the terms thereof the policy in question had been automatically terminated on June 18, 1934.

Plaintiff, by his reply, sets up the failure of the defendant to give any notice to the assured or to the beneficiary (plaintiff herein) of the agreement between the Loyal American and the defendant, or of its terms and provisions under which it was required so to do, and denies that said agreement or any of the terms thereof became a part

of the policy in question issued to the assured by the Loyal American, and denies that the plaintiff was subject to any of the conditions of said agreement or that any of the terms thereof became obligatory upon the assured or the plaintiff as beneficiary, and alleged that the defendant cannot now impose a lien upon the reserve under said original policy by virtue of said agreement.

Plaintiff further alleges in said reply that said policy was in full force and effect at the time of the death of the assured, eleven quarterly premiums of $26.64 having been paid over a period of two years and nine months from the date of delivery thereof, and that said Loyal American was without authority to lapse or suspend said policy either on November 1, 1932, or December 1, 1932, for the reason that there was no premium then due thereon, and that by reason of the attempted forfeiture and suspension of said policy at a time when no premium was due, assured was relieved of any further payment of premiums upon said policy; that the policy was dated May 2, 1930, and delivered June 30, 1930, and took effect at the last named date; that by reason of the facts above set forth the defendant, by its action and conduct, is estopped to forfeit said contract of insurance or to reduce the amount thereof or to impress a lien thereon.

Upon the trial, the plaintiff introduced in evidence the policy sued upon and made proof of the death of the assured on April 5, 1935, of notice of his death to the defendant, of the refusal of the defendant, upon request made by the plaintiff, to furnish blank forms for proof of death of the assured, of the defendant's claim that said policy was not in force at the time of the death of the assured, but had been permitted prior to that time to lapse, of defendant's letter of October 3, 1935, to the effect that the policy must ''be continued in good standing for a period of three years before any reserve accumulations would be available'' (when, in fact, the policy itself provided for reserve after the premiums were paid for a period of two years), of defendant's denial of liability for this and other reasons. · In short, plaintiff made proof by substantial evidence of all the material allegations of his petition and of his reply. He made proof that the defendant had acquired and taken over all of the property and assets of the Loyal American by proving the agreement whereby such transfer was made and the admission of this fact by defendant, and made proof that by the terms of said agreement the defendant was required to give notice by mail to each of the holders of membership in the Loyal American, or to any assignee thereof, and made proof that no such notice was ever given to the assured in his lifetime, or to the plaintiff as beneficiary, until several months subsequent to the death of the assured.

Defendant in its motion for rehearing challenges our assertion that plaintiff made proof tending to show that no notice of said agreement was given the assured in his lifetime. We have carefully re-examined

the record in this respect and we are convinced that defendant's position cannot be sustained. According to plaintiff's evidence, plaintiff was the son of the assured, lived in the same house with the assured during the period of time involved herein, and looked after correspondence addressed to his father with reference to this insurance policy, and, as to the premiums that were paid up to December, 1932, upon receipt of premium notices addressed to his father, the plaintiff looked after and personally mailed back said notices together with remittance therefor. Plaintiff testified that following two letters written by him to the defendant in October, 1935, six months after the death of the assured, he received from the defendant, enclosed in their letter of October 29, 1935, a copy of the agreement between the two associations. He testified that he had never seen and had never known of the existence of such an agreement prior to this time. This testimony, if believed by the jury, constitutes sufficient evidence to rebut any presumption that notice was given, arising from the testimony of the Assistant Secretary of the defendant association to the effect that copies of the agreement and two explanatory letters were mailed to all the certificate holders of the Loyal American, and that a copy of the agreement together with copies of said letters were mailed to the assured at 538 Troost Avenue on July 14, 1934. In this connection, it should be noted that this witness did not testify that she personally mailed said papers or directly supervised the mailing thereof. There was also the fact that this witness had written plaintiff a letter in October, 1935, containing admittedly mistaken information about this policy of insurance.

In passing upon this point under very similar circumstances, the Springfield Court of Appeals, in Hall v. American Ins. Union, 27 S. W. (2d) 107, l. c. 1078, the court sets out the facts and its rulings thereon, as follows:

"Defendant offered evidence that it 'mailed' a notice of the agreement and options therein specified to every member of the American Mutual Union, including G. W. Hall, deceased. Plaintiff's evidence went no further than to prove that, although he had to some extent looked after the business of the insured, G. W. Hall, during that period of time, he had no knowledge of the receipt of any such notice, and no notice was found among G. W. Hall's papers. This made a question of fact for the jury. The proof of mailing of the notice, even though not specifically contradicted, was not sufficient to justify this court in holding, as a matter of law, that G. W. Hall received the notice, for the reason the jury was not bound to believe defendant's evidence."

Likewise, under evidence closely analogous to the case at bar, both as to mailing notice and as to failure to receive notice, the Missouri Supreme Court, in the case of Armour & Co. v. American Automobile

Ins. Co., 80 S. W. (2d) 685, held that the evidence presented there made a question for the jury.

Gauged by the last two cases cited we think it must be conceded that the evidence in the case at bar was sufficient to make a jury question on this point, and we so hold. This question was submitted to the jury and was resolved in favor of the plaintiff.

The first point made by the defendant on this appeal is that the trial court erred in refusing to give its Instruction B, in the nature of a demurrer, at the close of all the evidence, on the ground that, under the evidence, the policy sued on had lapsed prior to the death of the assured.

Defendant contends that the premiums upon the policy, having been paid only up to and including November, 1932, the reserve value of the policy at such time was insufficient to extend the insurance under said policy over a period to and including the date of the death of the assured.

Margaret G. Pollock, testifying on behalf of plaintiff, having first qualified as an actuary, testified that at the time that the policy in question became one for extended insurance on December 1, 1932, it had under its terms a reserve value of $75.36, and that such value was sufficient to carry it for extended insurance to May 21, 1935, which was beyond the date of the death of the assured on April 5, 1935. This evidence was sufficient to carry the case to the jury on this issue, and this point must therefore be ruled against the defendant.

Defendant further contends that its demurrer should have been granted by the trial court because, under the terms of a written contract of July 14, 1934, between the Loyal American and the defendant, the policy sued on had been extinguished prior to the death of the assured. Defendant urges that the plaintiff, having pleaded that the Loyal American and the defendant entered into said agreement whereby the defendant, in consideration of the transfer, assignment and delivery to it by the Loyal American of all of its property and assets, assumed the obligations and the liabilities of the Loyal American on the policy in question, and having offered in evidence said written agreement, plaintiff was bound by the terms thereof, as to his right of recovery herein.

Defendant further argues that plaintiff cannot be allowed to select the provisions of said agreement which are favorable to his right of recovery and reject such as are adverse to his interests, and that he must accept or reject such agreement as a whole. Defendant contends that, by the operation of certain of the provisions of said agreement so allegedly relied upon by plaintiff, the reserve value of the policy sued upon for extended insurance, had been reduced in the adjustment or discharge of a lien thereon which attached by virtue of certain provisions of said agreement, to such a point as to leave only 24 percent thereof available for extended insurance, and that the

reserve so reduced was insufficient to continue in effect such insurance to the date of the death of the assured, and that, by certain other provisions of said agreement, the extended insurance under the policy had been automatically terminated on July 14, 1934. Defendant contends, upon the testimony of its witnesses as to the reserve value of the policy in question, made upon computations taking into consideration the operations of the provisions of the merger agreement, the extended insurance upon which the policy was in force lapsed July 14, 1934, and that, upon the computation by plaintiff's witness Pollock, of the reserve value of the policy when such policy was reduced in accordance with the provisions of the agreement, it lapsed September 1, 1934.

There can be no dispute as to the general rule of law that, if one relies on a contract, he must take it with its burdens as well as its advantages. However, it is equally well-settled that such principle is not available under circumstances such as presented in this case, wherein the holder of a policy received no notice of an agreement to which he was not a party and by which it is sought to limit or modify his rights under the terms of his pre-existing contract of insurance. If the defendant had, without any agreement as to its assumption of the obligations of the Loyal American, taken over the assets of the Loyal American without consideration, upon having done so it would heave thereby become unqualifiedly liable for the obligations of the party whose assets it had thus acquired. [Thompson v. Abbott et al., 61 Mo. 176; Berthold et al. v. Holladay-Klotz Land & Lumber Co., 91 Mo. App. 233; Lincoln Safe Deposit Co. v. Continental Life Ins. Co., 213 Mo. App. 561, 249 S. W. 677; Hall v. American Ins. Union (Mo. App.), 27 S. W. (2d) 1076.]

So far as this assured was concerned, that is precisely what was done by the defendant in the case at bar. The defendant did not take over the property and assets of the Loyal American under any agreement with the *assured*. The jury determined that the defendant failed to give the assured any notice of the transaction or the terms and conditions thereof. In the absence of notice of said merger agreement and the terms thereof to the assured, it was not binding upon him or upon the beneficiary named in the policy. [Hall v. American Ins. Union, *supra*; Helm v. Ben Hur Life Assn. (Mo. App.), 107 S. W. (2d) 844; Sherman v. International Life Ins. Co., 291 Mo. 139, 236 S. W. 634.]

In the case of Helm v. Ben Hur Life Ass'n, *supra*, this court had before it for consideration the identical question on the identical agreement involved in this case, in a suit against the same defendant and on a policy issued by the same insurer. In that case, subsequent to the merger, the premium due for the month of August was collected by the defendant, and ten days thereafter defendant's agent informed the assured of the merger but did not communicate any of the details

and conditions thereof to the assured, and did not advise assured of any rights that he might have under the provisions of the merger agreement, but advised him that the assets of the insurer had been wiped out and, further, that because of the assured's impaired health, he would not be accepted by the defendant company. The assured paid no further premiums. Following his death on June 30, 1935, defendant denied liability and suit was brought, resulting in a judgment for the plaintiff. Under such circumstances we there held that:

"Knowing the true facts, defendant concealed them from insured and caused its agent to collect the August premium on this very policy and still retains this premium, together with the admitted surpluses of assets over and above its so-called lien which, under defendant's admission, was, and still is, due insured on account of this policy. Although some policyholders were accepted by defendant and issued new policies and given credit for some cash value on their old policies, insured was not among the favored to whom this opportunity was offered. . . . By reason of its fraudulent conduct and concealment it (defendant) is estopped to set up in defense a contract, the terms of which were concealed from insured and the true situation designedly misrepresented to him."

In the case at bar, no premium was collected by the defendant from the insured subsequent to the merger. But aside from this distinction, the facts in the two cases are closely analogous. It is our view, however, that the payment of premium in the Helm case was not essential to the conclusion therein reached. The underlying basis of the rule there laid down was the fact that the defendant *concealed* from the assured the terms and conditions of the merger agreement and thereby denied to him the opportunity to take such action as he saw fit with respect to protecting his interest in this insurance under the terms of the merger agreement or otherwise. If this view of our decision in the Helm case is deemed to go beyond a fair interpretation of the language of our opinion in that case, it at least represents our present view and we so announce it as the rule applicable to a decision of the case at bar.

In Sherman v. International Life Ins. Co., *supra*, the Supreme Court of Missouri said (S. W. Reporter, p. 640): .

"It is a matter of grave doubt as to whether the court in any proceeding, with all the parties before it, could have compelled the certificate holders against their will to enter into new contractual relations under penalty of forfeiting rights vested under the then existing contracts. But of this there can be no doubt; it could not annul the contracts and the rights incident thereto of any who had not been given notice of the proceeding or who had not been afforded an opportunity to be heard. [Windsor v. McVeigh, 93 U. S. 277, 23 L. Ed. 914.]"

Defendant, in support of its contention that its liability on the pol-

icy sued on in this case is limited by the terms of the merger agreement, cites the case of Green v. American Life & Accident Ins. Co., 112 S. W. (2d) 924. This case does not lend the slightest support to defendant's contention. On the contrary, the court, in determining defendant in that case was not liable to the extent originally provided in the policy of insurance, but only to the extent of the liability it assumed under its reinsurance contract, expressly recognized the rule we have herein stated which we have held applicable to the facts in the case at bar. In the Green case, the contract under which the defendant had taken over certain policies of insurance of another company, including the one in suit, was not a private contract between the two companies. The company which had the liability prior to the time the defendant company was involved had, in a court proceeding, been found to be insolvent and receivers had been appointed to preserve its assets. Defendant company had negotiated an agreement with the receivers of the insolvent company, which contract had been approved by the court in the receivership proceeding. The distinction in the situation in the case at bar and that in the Green case appears from the following quotation in the latter case, l. c. 928:

"There is considerable discussion in the case about whether the insured received notice from defendant of the terms of the reinsurance contract. Suffice it to say that the measure of defendant's liability was fixed by the contract, and did not depend upon any notice to the policyholders. This is no case of a private reinsurance agreement entered into between two companies where the assent of the policyholders to any change would be required, but *here the reinsurance agreement was entered into by virtue of a court order which was made in the course of the receivership proceeding in which all the policyholders were represented by the superintendent of the insurance department, and by the result of which they were no less bound than if their names had appeared as actual parties to that suit.*"

Furthermore, it cannot be said that the plaintiff in this case is basing his suit upon any rights in himself under the agreement between the Loyal American and the defendant. Plaintiff, in his petition, merely alleges that the defendant took over all of the assets of the Loyal American without any consideration other than an agreement to assume its obligations. It is plaintiff's contention that this fact, plus the retention by defendant of such property and assets, furnishes a basis for his right of recovery against it. Neither he nor the assured received any notice of the merger contract during the life of the assured. He does not adopt the contract, nor does he in any way become a party to it. He does not assert any rights under it. He merely bases his right of recovery against defendant upon the transaction *as disclosed by the agreement which he put in evidence.* For this further reason, the rule contended for by defendant that, if one relies upon a contract, he must take it with its burdens as well as its advantages, is not applicable under the circumstances of this case.

In the case at bar the defendant failed to give notice to the assured in his lifetime of the terms and conditions of the agreement under which defendant acquired all of the assets of the insurer in the policy sued on. Thus the assured was given no opportunity to accept or reject said contract or to guard against the forfeiture thereof under the terms of the merger agreement by taking appropriate action to keep it in force under the terms of said agreement. Under such circumstances, the defendant will not be permitted to assert a modification or limitation of the express terms of a contract of insurance based upon a merger agreement to which assured was not a party and of which he had no notice.

Under the plea of estoppel in plaintiff's reply he was entitled to show that the defendant was estopped from asserting that by virtue of a subsequent merger agreement of which the assured had never been notified, the insurance policy under the extended insurance provisions thereof was not in full force and effect at the time of the assured's death. [Missouri Cattle Loan Co. v. Great Southern Life Ins. Co., 330 Mo. App. 988, 52 S. W. (2d) 1.]

The law abhors forfeitures and the court will not enforce them against equity and good conscience. [Anderson v. Merchants & Mechanics Mutual Aid Society, 65 S. W. (2d) 140; Peterson v. Natl. Council of Knights & Ladies of Security, 189 Mo. App. 662, 175 S. W. 284.]

The defendant next complains of the admission in evidence of the testimony of the witness Margaret G. Pollock for the plaintiff, for the reason that, in determining her actuarial computation, she did not consider the agreement between the Loyal American and the defendant; in other words, that she did not take into consideration the reduction in the reserve value by reason of the adjustment of the lien provided for in said agreement. She was not required to take into consideration such agreement and its provisions. As we have already determined, the plaintiff's policy was not affected or controlled by such contract or any of its provisions because no notice thereof was given to the assured. The reserve value was therefore to be computed in accordance with the provisions of the policy, which provided that it was based on the National Fraternal Congress Table of Mortality, with interest at four percent and for the computation of the reserve on such basis. The witness in her testimony stated that the computation of the reserve made by her to which she testified was based on such table with interest at four percent.

The defendant next complains of Instruction No. 1 for the plaintiff as being erroneous. We have examined such instruction with the view of determining whether or not any of such criticisms against it are justly made. We are unable to find wherein they are. Said instruction was not erroneous in any of the particulars claimed by the defendant. Its point against such instruction is denied.

It next complains of error in the refusal of its requested Instruction D. There was no error in the refusal of such instruction. It sought to advise the jury that the plaintiff was bound by the terms of the agreement between the Loyal American and the defendant, regardless of whether the assured had notice of the merger agreement or not. This does not correctly declare the law. The court would have committed error had it given such instruction.

Complaint is next made of the refusal by the trial court to give the defendant's Instruction E as originally requested. The instruction as originally requested was erroneous in submitting that the burden was on the plaintiff to show that the policy sued on was in full force and effect at the death of the assured on April 5, 1935, *in accordance with the terms and provisions of the agreement of July 14, 1934, between the Loyal American and the defendant.* As has been determined herein, such agreement, in the absence of a showing of notice thereof to the assured, was not in any way determinative of whether or not the policy sued on was in full force and effect at the date of the death of the assured on April 5, 1935. Defendant complains also of the giving of such instruction as amended by the court. The court amended such instruction by adding the words, "provided insured had notice of said contract as provided therein," and gave such instruction as amended. The mendment was properly made, and the giving of such instruction as amended was proper. This point must likewise be resolved against defendant.

It follows that the judgment of the trial court should be and is affirmed. All concur.